SWASEY (FOSTER v.). See Cases Nos. 4,-984 and 4,985.

## Case No. 13,679.
SWASEY v. NORTH CAROLINA R. CO.
et al.

[1 Hughes, 17;[1] 1 Am. Law T. Rep. (N. S.) 359, 71 N. C. 571.]

Circuit Court, E. D. North Carolina. June, 1874.

STATES — PARTY IN INTEREST — STATE'S AGENT — RAILROAD COMPANIES—STOCK—CERTIFI-CATES OF DEBT—INTEREST.

1. Where a state of the Union is a party in interest but not a party to the record, the jurisdiction of the United States circuit court attaches where that court has jurisdiction of the state's agent who has charge of the property, as a trustee, and where the property which is the subject of the suit is stock or shares in a railroad company, held by it in pledge for the security of a debt due to the complainant, for which a lien has been given by the state "in addition" to the pledge.

[Cited in Lee v. Kaufman, Case No. 8,191.]
[Cited in King v. La Grange, 61 Cal. 228.]

2. Where stock in a corporation has been pledged for the "redemption of certificates of debt," and the certificates bound the debtor for the payment of "the sum therein mentioned and the interest thereon," the stock is bound for the payment of the interest itself, and a foreclosure may be decreed on default in payment of any instalment of interest.

[Distinguished in Toler v. East Tennessee, V. & G. Ry. Co., 67 Fed. 182.]

At law.

WAITE, Circuit Justice. The North Carolina Railroad Company was incorporated by an act of the general assembly, passed January 27th, 1849, to construct a railroad to commence at the Wilmington & Raleigh Railroad, and proceed to Charlotte. To aid in building the road, the board of improvement was, by the act of incorporation, authorized to subscribe on behalf of the state $2,000,000 to the capital stock of the company. Sections 38 and 41 of the act are as follows:

"Sec. 38. That in case it shall become necessary to borrow the money by this act authorized, the public treasurer shall issue the necessary certificates, signed by himself and countersigned by the comptroller, in sums not less than one thousand dollars each, pledging the state for the payment of the sum therein mentioned, with interest thereon at the rate of interest not exceeding six per cent. per annum, payable semi-annually, at such times and places as the treasurer may appoint; the principal of which certificates shall be redeemable at the end of thirty years from the time the same are issued, at any one time there may be sufficient to meet the instalment required to be paid at that time."

"Sec. 41. That as security for the redemption of said certificates of debt, the public faith of the state of North Carolina is hereby pledged to the holders thereof, and in addition thereto, all the stock held by the state of North Carolina Railroad Company, hereby created, shall be and the same is hereby pledged for that purpose, and any dividends

[1] [Reported by Hon. Robert W. Hughes. District Judge, and here reprinted by permission.]

of profit which may from time to time be declared on the stock held by the state as aforesaid, shall be applied to the payment of interest accruing on said certificates; but until such dividend of profit may be declared, it shall be the duty of the treasurer, and he is hereby authorized and directed, to pay all such interest as the same may accrue out of any moneys in the treasury not otherwise appropriated."

The authorized subscription was made and certificates of debt issued to the amount of $1,858,000, on which the money was borrowed to meet the payments. By these certificates it was "certified that the state of North Carolina justly owes ———, or bearer, $1,000, redeemable in good and lawful money of the United States, at, etc., on the 1st day of July, 1884, with interest thereon at the rate of 6 per cent. per annum, payable half yearly at, etc., on, etc., until the principal be paid on surrendering the proper coupon hereto annexed." On the 14th of February, 1855, the general assembly passed another act, entitled "An act for the completion of the North Carolina Railroad," by the terms of which the public treasurer was authorized and instructed to subscribe $1,000,000 more to the capital stock of the company, and to make payment therefor by issuing and making sale of the bonds of the state, under the same provisions, regulations, and restrictions prescribed for the sale of the bonds theretofore issued and sold to pay the state's original subscription, and the same pledges and securities were thereby given for the faithful payment and redemption of the certificates of debt then authorized, as were given for those issued under the direction of the first act. This stock was by the terms of the act to be a preferred stock. The subscription was made, and certificates of debt, in the same general form as the first, issued to provide the means of payment. The plaintiff is the owner of five certificates of the first issue and two of the second. The interest on the first, payable January 1st, 1869, and after, and on the second, payable April 1st, of the same year, and after, was unpaid when this suit was commenced. This action is prosecuted for the benefit of all bondholders who may come in and make themselves parties. About $1,800,000 of the indebtedness is now represented. No certificate for the stock, upon either of the subscriptions, had been issued by the company at the time of the commencement of this action. Since that time, upon the order of the court, the proper certificates have been issued, and placed in the hands of a receiver, appointed in this cause, who has collected the dividends thereon as they have from time to time been declared and paid. These dividends as far as received have been applied to the payment of interest, but there is still a large amount in arrears, and the plaintiff now asks that a sufficient amount of the stock may be sold to pay what is past due.

It is first insisted by the defendant that the state of North Carolina is in fact a party defendant, and consequently that this court cannot entertain jurisdiction of the cause. The state, although directly interested in the subject-matter of the litigation, is not a party to the record. The eleventh amendment to the constitution of the United States provides that no suit can be prosecuted in this court against a state, by the citizens of another state, or by citizens or subjects of a foreign state. It has long been held, however, that this amendment applies only to suits in which a state is a party to the record, and not to those in which it has an interest merely. It is next urged that if the state is not actually a party to the suit, it is a necessary party in whose absence the cause cannot proceed, and that as a state cannot be brought into court, no relief should be granted upon the case made. If the state could be brought into court, it undoubtedly should be made a party before a decree is rendered, but since the case of Osborn v. Bank of U. S., reported in 9 Wheat. [22 U. S.] 738, it has been the uniform practice of the courts of the United States to take jurisdiction of causes affecting the property of a state in the hands of its agents without making the state a party, when the property or the agent is within the jurisdiction. In such cases the courts act through the instrumentality of the property or the agent. The real question, therefore, presented for our determination is whether the court has jurisdiction of the property which it is sought to charge, or of the agent of the state having it in possession. The property consists of shares in the capital stock of a corporation. At its inception it became charged as security for the payment of the debt of the state contracted on its account. This was part of the law of its creation. It has always been pledged. The property of a corporation represents its stock. This property the corporation holds for its stockholders. A stockholder's share of the stock is equal to his share of the corporate property. The railroad company, therefore, in this case, holds the share of its property represented by the stock subscribed by the state in trust, as well for the stockholders as for the state. The charter made the company the depositary of the pledge to hold it for both parties according to their respective interests. Consequently a suit which seeks to charge the stock as security, and brings the corporation in to represent it, may be maintained in the absence of the state as a party. This was evidently the understanding of the parties when the pledge was made. It was then the case as now, that a state could not be sued, but that its agents could, and that property in the hands of its agents could be controlled and disposed of by the courts in proper cases, notwithstanding the ownership by the state. The faith of the state had been pledged. This pledge the courts could not enforce. The

stock to be obtained with the money borrowed could not be reached under such a pledge of faith alone, because a suit could not be prosecuted for that purpose. Understanding this, a lien was given upon the stock as security "in addition" to the pledge of faith. But it was no addition if the bondholder had no power to make his security available. A lien which cannot be enforced has no value as a security. These parties were engaged in no such vain work. It was clearly their understanding that the state not only should, but that it in fact did, grant to the bondholders the power to use the machinery of the courts to subject this portion of their security if default should be made in the payment of the debt. In sustaining this action, then, we are but carrying into effect the manifest intention of the parties at the time the money was borrowed.

The next objection is that the stock was pledged as security for the payment of the principal of the debt alone, and not the interest, and that as the principal is not yet due there can be no decree for a sale. The stock was pledged for the "redemption of the certificate of debt." The certificate bound the state "for the payment of the sum therein mentioned, with interest thereon." Thus it is apparent that the interest is as much a part of the obligation of the certificate as the principal. If more is necessary to sustain this view, it is to be found in a subsequent part of the section where it is provided that the "principal of the certificate shall be redeemable," etc. If it had been supposed that the certificate only related to the principal, it would have been sufficient to provide for the time of the redemption of the certificate, the same as in section 41, the security for the redemption of the certificates was designated and granted. If then the certificate bind the state for the payment of both principal and interest, it would seem to follow must unquestionably that whatever was given as security for its redemption could be held for the performance of all its obligations. But it is argued that the dividends are specially designated as security, and the only security, for the payment of the interest. The language of the act is that the dividends "shall be applied to the payment of the interest accruing on such certificates." This is additional security. Without it (as the state could not be sued) there was no power to compel this application. With it there was. The officer in whose custody the dividends were placed, was, so long as the fund remained in his hands, amenable to the process of the courts to compel him to do what the law required of him. It is again claimed that, as it was made the duty of the treasurer, until dividends were declared, to pay the interest as it accrued out of any moneys in the treasury not otherwise appropriated, it could not have been intended that the stock should be held for anything but the principal. This, too,

was additional security. Without it the bondholder had no power to enforce the payment of the interest. With it, after default, upon a proper showing, the treasurer could be compelled to apply the unappropriated moneys in his hands to discharge that obligation. Neither can an argument in favor of the claim of the defendant be drawn from the fact that the stock is pledged for the redemption of the certificate. It is true the principal of the certificate was made redeemable at the end of thirty years, and that the interest thereon was payable semi-annually. The certificate could not be redeemed until both principal and interest were paid. Redemption and redeemable are, therefore, in this connection, only other names for payment and payable. and the general assembly appears to have used the words as though they conveyed the same meaning. If the stock was not given in security for the interest, then the faith of the state was not pledged for its payment, for that, like the stock, was only pledged for the redemption of the certificate. So, too, if no payment of interest should be made during the whole thirty years, no part of the stock could be applied to its payment then, even though its value should be sufficient to discharge both principal and interest. If the stock is held at all for the payment of the interest, it may be subjected at any time after a semi-annual instalment falls due.

For these reasons we are clearly of the opinion that the plaintiff, and those whom he represents, are entitled to have their proportion of the stock, or so much thereof as may be necessary, sold in order to pay the past due interest upon their bonds. They can act, however, only for themselves. So much of the stock as equitably belongs to them as security they can control in this action, but no more. The security is divisible, and should be apportioned to the various bondholders according to the amount of their respective claims. Each bondholder should have an amount of stock which bears the same proportion to the whole stock that his bonds do to the whole amount outstanding. We are not willing, however, to order that a sale be made until ample time has been given the state to provide, by levy and collection of taxes, the necessary funds for the payment of the interest now past due, and such as may fall due before the money can be realized and applied. An account may be taken of the amount due for unpaid interest upon the bonds represented in this cause, and of such as will mature on or before the 1st day of April, 1875, and a decree entered that if full payment thereof is not made by that day, so much of the stock apportioned as security to the plaintiff, and those he represents, as may be necessary to pay the same, be sold. If on or before the day of sale it shall be made to appear to the court that the state has, in good faith, levied a tax to pay the arrears of interest on the debt, and

provided for its collection, the sale will be further suspended until a sufficient time shall have elapsed for the collection to be made.

[NOTE. Subsequently a decree was made in this court as follows: "This cause coming on for further order, the court doth declare: (1) That, by the terms of the charter of the North Carolina Railroad Company, and the amendments thereto, the shares of stock in said company belonging to the state of North Carolina, meaning thereby the shares and all dividends thereon, are pledged as security for the payment of the certificates of debt in such charter and amendments provided for, and for every part of such certificates, meaning thereby the interest accruing upon the principal thereof, as well as the principal. (2) That the plaintiff and those he represents, as owner of such certificates of debt or bonds or of coupons detached therefrom, now hold large amounts of past-due coupons of said certificates of debt or bonds, and that they are entitled to have their respective proportions of the stock, or so much thereof as may be necessary, sold in order to pay such past-due interest. Upon motion of counsel for the plaintiffs, it is therefore ordered and decreed that Joseph B. Bacheler, the commissioner heretofore appointed in this suit, take an account of such unpaid interest, and of such further interest as will be due on or before the 1st day of April, one thousand eight hundred and seventy-five, and also of such proportion of the said stock of the state of North Carolina in said North Carolina Railroad Company as may be equitably applicable to the payment of said interest found due to each of said plaintiffs, respectively, and that he make report to the next term of this court. It is further ordered and decreed that, unless, on or before the 1st day of April, 1875, it shall be made to appear to this court that the said state of North Carolina has levied a tax sufficient to pay the said arrears of interest, and has provided for its collection, or shall otherwise have paid or secured the payment of said past-due interest, then so much of the said stock of the state in the said North Carolina Railroad Company apportioned to the plaintiff and those he represents as may be necessary to pay off and discharge said arrears of interest shall be sold to the highest bidder for cash." Directions were then given as to the manner in which the sale was to be made, and at the end of all were these words: "And this cause is held for further directions."

[An appeal was then taken to the supreme court, where a motion was made to dismiss the appeal on the ground that the above decree was not final. The appeal was dismissed. 23 Wall. (90 U. S.) 405.]