[No. 6,555.—In Bank.]
Aug. 15, 1882.

## JAMES L. KING v. O. H. LA GRANGE.

EJECTMENT AGAINST UNITED STATES OFFICER—JURISDICTION.—Ejectment will lie against an officer of the United States in possession of the demanded premises on behalf of the government.

ID.—ID.—CASE DISTINGUISHED—DICTUM.—Carr v. The United States, 98 U. S. 433, distinguished and the dictum in that case disapproved.

ID.—LAW OF THE CASE.—The case is not materially varied from the case presented on the former appeal (50 Cal. 328), and the decision on that appeal is therefore the law of the case.

ID.—DEVISE OF COMMUNITY PROPERTY—WAIVER—ESTOPPEL IN PAIS.—W. being the owner of an undivided one third of the land in controversy as community property, (his co-tenants being P. and C.) devised and bequeathed an undivided one tenth of all his estate, real, personal and mixed, to V., and all the rest and residue of his estate, real, personal and mixed, to his wife. After W.'s death, P.—who by the will had been appointed executor with power of sale—sold and conveyed to C. all the right, title and interest of W. in the said land, Mrs. W. upon a settlement with the executor receiving her share of the proceeds. Afterwards C. sold to the government for a largely advanced price. Mrs. W. conveyed all her right, title and interest in the land to the plaintiff, who brought this action against S., then in possession of the land as Superintendent of the United States Branch Mint; and S. dying pending the action, the present defendant, his successor in office, was by an order of the Court substituted in the action as his successor in interest. Upon a former trial judgment was rendered for the defendant, but, on appeal from an order denying a new trial on the ground that the evidence was insufficient to justify the decision of the Court, the order was reversed. Upon a second trial no new evidence was introduced except a bill in chancery filed by Mrs. W., (the plaintiff's grantor) and her co-legatee in the United States District Court for California, against P. and C. to set aside the sale from the former to the latter and to compel them to pay over to her one third of the price received from the government. A letter from M. and W. (the solicitors of her co-legatee in that action), to the Secretary of the Treasury inclosing a copy of the bill, was offered in evidence but excluded by the Court. The judgment was for the plaintiff.

Held: It was held on the former appeal that the evidence was insufficient to support a finding that the deceased intended to dispose of more than his own half of the community property, or that his widow knowingly performed any act which could be construed to be a waiver of her rights. Upon the former question the evidence on the last trial was the same as upon the first, and the question is no longer an open question in this case. Upon the latter question the only additional evidence is the bill in chancery, and there is nothing in that which tends to prove a ratification of the conveyance of her interest in the community property, which it is claimed the executor attempted to convey.

ID.—RES INTER ALIOS ACTA EVIDENCE.—The ruling of the Court in excluding the letter of M. and W., was correct. It was clearly *res inter alios acta.*

ID.—LAW OF THE CASE—SUBSTITUTION OF PARTIES.—The objection that the Court had not the power upon the death of S. to continue the action against the present defendant comes too late.

APPEAL from an order denying defendant's motion for a new trial in the Fifteenth District Court of the City and County of San Francisco. DWINELLE, J.

The main facts of the case are stated in the report of the former appeal. (50 Cal. 328.) The material parts of the will were as follows:

"I, Samuel Ward, etc. * * * do hereby nominate and appoint my partners, Joseph R. Curtis and Philo H. Perry, the executors of this, my last will and testament, with full power to manage, sell, dispose of, and control all my estate, real, personal and mixed, in such manner as to them shall seem meet, and as I might do if living, subject to the grants hereinafter made, and in case of the death, absence, or inability of either to act, then the remaining one is to be my sole executor, with full and complete power to act in the premises.

"I do hereby further will and direct that my interest in the assaying office at San Francisco shall remain unchanged, so long as the said Perry and Curtis shall continue to be the contractors for the Government assaying, and that my executors shall continue to manage the same precisely as if I am present, it being my express will that while they continue in said assay office that my interest should remain wholly unchanged.

"I do further give, devise, bequeath and dispose of to my sister, if she be now living, Maria N. Verner, of Pittsburg, and to her heirs, the one undivided one tenth of all my estate, real, personal and mixed, and charge my executors with the execution of this wish, subject, however, to the previous and foregoing portion of this, my will.

"I do further give, devise, bequeath, convey and dispose all the rest and residue of my estate, real, personal and mixed, and the rents, issues and profits thereof, to my wife, now living at Middleton, Connecticut." * * *

The deed from Perry to Curtis was as follows: "This deed

witnesseth that Philo H. Perry, under the power vested in him by the will of Samuel H. Ward, late of San Francisco, has, in consideration of the sum of thirteen thousand three hundred dollars and thirty-three cents paid to him, said Perry, as executor, has bargained and sold, and now bargains, sells and conveys, to Joseph R. Curtis, of the City and County of New York, and to his heirs forever, all the right, title and interest of said Ward in the parcel of land situate in the City of San Francisco." (Here follows description of land, etc.) The writers of the letter referred to in the opinion, Magraw & Wills, were attorneys of the co-plaintiffs of Mrs. Ward, who appeared by different counsel.

*L. D. Latimer* and *Wm. W. Morrow*, for Appellant.

The Court had no power upon the death of Swain, to continue the action against La Grange, as his successor in interest. The action, of course, could have been continued against La Grange only upon the ground that he was a successor in interest. To constitute succession in interest there must be privity. There was no privity between Swain and La Grange. There was no interest in Swain to which La Grange succeeded by reason of Swain's death.

The character of the possession of both was not such as will authorize the maintenance of an action of ejectment against them, or either of them. It is not disputed that an action of ejectment must be brought against the person in possession, but it does not follow because one is in occupation of land that he is in possession, within the meaning of the term as used in the law of ejectment. The defendant in ejectment must be he who possesses or occupies in his own right; who holds, as either owner or tenant—he must have, or claim, some interest in the land. Only such a party can be made a defendant in ejectment. (Brown on Parties, 246; Adams on Eject. 512; 7 T. R. 327; 1 Chan. 574; 3 Seld. 201; 9 Cal. 268; 21 id. 609; 24 id. 192.) And it has been held that mere occupiers are not tenants. (16 Serg. & R. 432, 2 Saund. 7 n. 4; 3 Penn. 529; 2 Bl. Com. 91, 328; 2 Bouv. L. Dict. 258, 351, 573, 579; Burrill's L. Dict., Title h. t.; Webster's Dict., Title, Possession; 4 Barn. & Ald. 653; 8 Barb. 244; 1 Chit. 118;

2 Barn. & Ald. 371; 11 Abb. Pr. 97; 28 Cal. 534; 36 id. 514; 20 id. 45.)

That a person in the occupation is not, in the action of ejectment, under all circumstances to be considered the person in possession, is shown by the decisions of this Court. In *Hawkins* v. *Reichert*, 28 Cal. 537, the Court says: "It will readily be seen that a mere servant, or employe, may in one sense have the occupation of the premises of which he has no control, and in which he claims no right; but his occupation is the occupation of his employer, within the meaning of that term, as employed when treating of the action of ejectment. (*Satterlee* v. *Bliss*, 36 Cal. 514; *State* v. *Curtis*, 4 Dev. & B. 225; *The People* v. *Ambrecht*, 11 Abb. Pr. 97; *Buchanan* v. *Alexander*, 4 How. 20; *The Mechanics & Trader's Bank* v. *Hodge*, 3 Rob. La. 373; *Buhne* v. *Corbett*, 43 Cal. 264; *Polack* v. *Mansfield*, 44 id. 36; *Carr* v. *The United States*, 98 U. S. 433; *Adams* v. *Bradley*, 5 Sawyer, 217; *Cummings* v. *The State of Missouri*, 4 Wall. 325; *The State* v. *Doyle*, 40 Wisconsin, 175.)

It seems quite evident, from the will itself, that Ward believed he had the right, and attempted, to dispose of all the community property by his will.

By commencing the suit in equity in the United States District Court, referred to, Mrs. Ward ratified the sale to Curtis. She made such statements and declarations in the bill as caused the United States, through its proper law officers, to favorably pass upon and accept the title which was about to be conveyed, and was afterwards conveyed, by the deed, from Curtis to the United States, through James Guthrie, the Secretary of the Treasury; and in connection with this matter, the letter of Magraw & Wills, counsel for complainants in the suit in equity, to the Secretary of the Treasury, inclosing a copy of the bill in that case, and stating the purpose and object of the suit, was a material and competent piece of evidence for the defendant; and the Court erred in sustaining the plaintiff's objection to it.

Mrs. Ward having, by the bill in equity, treated the contract of Curtis to convey to the Government, as a valid, existing and binding agreement, cannot now be permitted to question the title which ripened in pursuance of that agree-

ment. (*Cairncross* v. *Lorimer*, 3 Macq. H. L. Cas. 827.) "Where one has received the fruits of a transaction, he is not permitted to deny its validity while retaining its benefits." (*Brant* v. *Virginia Coal and Iron Co.*, 93 U. S. 326.)

Mrs. Ward received from the executor, and retains, the purchase money for the entire one third of the lot. She has not offered to return any portion of it. The presumption is, and so is the proof, that she knew when she received it that it was the proceeds of the sale of the whole one third, but whether she did or not is immaterial; the fact that she still retains it is undisputed. She cannot have both the money and the land. This is a principle of equity founded on reasons so plain that it need but be stated. By the receipt and retention of the money she has ratified the sale, and she is now estopped from asserting title to that part of the lot sold, the proceeds of which she received and retains. (2 Smith's Leading Cases, (6 Am. Ed.) 769–70 ; *Smith* v. *Warden*, 19 Penn. St. 424; *The State* v. *Stanley*, 14 Indiana, 109; *Tabler* v. *Wiseman*, 2 Ohio S. 217 ; *Maple* v. *Kussart*, 53 Penn. 352; *Simpson's Appeal*, 8 Penn. 199.

The appellate Court is foreclosed by, in the same case, *only* such points as were presented by the record, and directly considered and adjudicated, and decision announced in the former appeal. (*Davidson* v. *Dallas*, 15 Cal. 83; *The State* v. *McGlynn*, 20 id. 276 ; *Mitchell* v. *Davis*, 23 id. 383 ; *Page* v. *Fowler*, 37 id. 105; *Nieto* v. *Carpenter*, 21 id. 455; *Phelan* v. *San Francisco*, 20 id. 45 ; *Kile* v. *Tubbs*, 32 id. 338 ; *Poorman* v. *Mills*, 43 id. 324; *Lick* v. *Diaz*, 44 id. 479: *Russell* v. *Harris*, 44 id. 489; *Hobbs* v. *Duff*, 43 id. 488.)

*Cope & Boyd*, for Respondent.

A judgment of the appellate Court, however erroneous, becomes the law of the case, and the first point decided by any Court, although it may not be in terms, is, that the Court has jurisdiction. (*Clary* v. *Hoagland*, 6 Cal. 685; *Washington Bridge Co.* v. *Stewart*, 3 How. (U. S.) 413.) It is immaterial whether the point was taken in argument or not, as the Court is bound to decide according to the law of the whole case. (*Hubbard* v. *Sullivan*, 18 Cal. 525; *Mulford* v. *Estudillo*, 32

id. 131.) And the decision on the first appeal is not only obligatory upon the Court below on the new trial, but also upon the appellate Court on the second appeal. (*Leese* v. *Clark*, 20 Cal. 417; *Lucas* v. *City of San Francisco*, 28 id. 591; *Polack* v. *McGrath*, 38 id. 666; *Yates* v. *Smith*, 40 id. 670; *Jaffe* v. *Skae*, 48 id. 543.) The record on the former appeal will be looked into for the purpose of ascertaining what facts were then before the Court. (*McKinlay* v. *Tuttle*, 42 Cal. 576.)

The action was properly continued against La Grange, the the successor in office of Swain, and in interest in the land in controversy. (Code C. P., § 385; *Ex parte Tinkum*, 54 Cal. 202; *Jordan* v. *Hubert*, 54 id. 260.) The Court had jurisdiction of the person of La Grange and the subject matter, though it was true that La Grange was in possession of the land in controversy as an officer of the Government of the United States.

Carr's case was decided upon the ground that the United States was not estopped by judgment against her officers or agents in charge of her real property, and that she had the better title thereto. The *dictum* in Carr's case is not supported by, but is directly opposed to former rulings of the Court where the question has been passed upon, and to its implied ruling in cases where it might have been raised. (*Osborn* v. *The Bank of the United States*, 9 Wheat. 738; *Davis* v. *Gray*, 16 Wall. 220; *Meigs* v. *M'Clung's Lessee*, 9 Cranch. 11; *Brown* v. *Huger*, 21 How. 305; *Cooley* v. *O'Connor*, 12 Wall. 391; *Grisar* v. *McDowell*, 6 id. 363; *Swasey* v. *North Carolina R. R. Co.*, 1 Hughes, 17; *Lee* v. *Kaufman*, 3 id. 36.) There is nothing in the additional evidence to justify a different decision; it does not show either a ratification or an equitable estoppel. (*King* v. *La Grange*, 50 Cal. 328; *Boogs* v. *Merced Mining Co.*, 14 id. 367.) The bill in equity filed in the District Court of the United States, is not evidence against the plaintiff. It was not signed or sworn to by Mrs. Ward, and it appears from her deposition that she had no knowledge of its contents. (Trans. folios 80, 81; *Combs* v. *Hodge*, 21 How. (U. S.) 404; *Cook* v. *Barr*, 44 N. Y. 158.) But nothing material is shown by it further than appeared on the former trial.

SHARPSTEIN, J. :

This is an action of ejectment, and the complaint is in the

ordinary form.   One of the defenses set out in the answer of
the defendant is, "that at the time of the commencement of
this action, he was Superintendent of the United States
Branch Mint, situated on the lot of land described in the
complaint, * * * and as such and not otherwise, he was
in possession of said lot for the United States, and not for
himself, and that he never had or claimed to have any in-
terest therein as owner, tenant or otherwise, and that from
1854, down to the present time, the United States has con-
tinuously been, and still is, the owner in fee and in the sole
and exclusive possession of said lot, and every part thereof."

It is not claimed, and could not successfully be claimed,
that by the interposition of this plea the court was ousted of
jurisdiction to proceed further in the action.   But an issue
was raised which the court was bound to try the same as
any other issue in the case.   If the facts alleged turned out
to be true, they would constitute a defense to the action.
Otherwise, not.   As to some of those facts there was no con-
troversy.   The plaintiff admitted "that since May, 1854, the
Government of the United States has claimed title to the
premises in dispute, and that since said time said premises have
been in the exclusive, open and notorious possession of the
successive Superintendents of said Branch Mint, as the officers
of and in behalf of the United States," under a deed from
one Curtis to James Guthrie, Secretary of the Treasury.

It was not admitted that the Government of the United
States was ever at any time the owner in fee of said lot or that
the Government was ever in possession of it, unless the posses-
sion of the defendant was the possession of the Government.
But it is insisted that the admission shows that he was not in
*possession* of the demanded premises within the meaning of
that term as used in the law of ejectment, and that therefore
the judgment is erroneous.

The precise question arose in *Polack* v. *Mansfield*, 44 Cal.
36, and it was there held that the action of ejectment would
lie against an officer of the United States in possession of the
demanded premises for the purposes of a military camp or
fortification under the direction of the Secretary of War or
of the President of the United States.   In support of this
the Court cited *Meigs* v. *M'Clung's Lessee*, 9 Cranch. 11, in

which the Court said: "The land is certainly the property of the plaintiff below, and the United States can not have intended to deprive him of it by violence, and without compensation. This Court is unanimously and clearly of opinion that the Circuit Court committed no error in instructing the jury that the Indian title was extinguished to the land in controversy, *and that the plaintiff below might sustain his action.*" And *Osborn* v. *The Bank of the United States,* 9 Wheat. 738, in which Chief Justice Marshall, delivering the opinion of the Court, used the following language: "It may, we think, be laid down as a rule, *which admits of no exception,* that in all cases where jurisdiction depends on the party, it is the party named in the record. Where the right is in the plaintiff and the possession is in the defendant, the injury can not be stopped by the mere assertion of title in a sovereign." Also, *McConnell* v. *Wilcox,* 1 Scammon, 344, in which the Supreme Court of Illinois held that the defense that ejectment would not lie because the occupant of the demanded premises was an officer of the United States, and in possession as such officer, and not otherwise, could "not be tolerated for a moment."

*Osborn* v. *The Bank of the United States, supra,* is cited in *Davis* v. *Gray,* 16 Wall. 220, in which the Court says that it was decided in the former case that: "In deciding who are parties to the suit the Court will not look beyond the record. Making a State officer a party does not make the State a party, although her law may have prompted his action, and the State may stand behind him as the real party in interest."

In *Swasey* v. *North Carolina Railroad Company,* 1 Hughes 17, Chief Justice Waite says: "Since the case of *Osborn* v. *The Bank of the United States,* it has been the uniform practice of the Courts of the United States to take jurisdiction of cases affecting the property of a State in the hands of its agents, without making the State a party, where the property or the agent is within the jurisdiction. In such cases the Courts act through the instrumentality of the property or the agent."

These, and *Brown* v. *Huger,* 21 How. 305; *Cooley* v. *O'Conner,* 12 Wall. 391; and *Grisar* v. *McDowell,* 6 id. 363, preceded

the case of *Carr* v. *United States*, 98 U. S. 433.   The question which the Court had to decide in the latter case was whether the United States would be concluded by a judgment recovered in an action of ejectment against a mere officer of the Government holding possession of the demanded premises solely by virtue of his office.   The Court held that the Government was not estopped by that judgment from maintaining an action to quiet its title to the premises in controversy.   But the Court did not treat the judgment recovered in ejectment as void.   It did not say that the Government was entitled to have its title quieted because it claimed the land and was in possession of it by its officers or agents when the action of ejectment was commenced.   But the Court went fully into the question of title, and held that the Government had a valid title to the land, and was not estopped from asserting it by a judgment rendered in an action to which it was not, and could not be made, a party without its express consent.

In one part of the opinion the Court did say: "If a proceeding would lie against the officers as individuals in the case of a marine hospital, it might be instituted with equal facility and right in reference to a post-office or a custom-house, a prison or a fortification."   But that was entirely outside of the case which the Court had before it.   As before stated, the only question which the Court had before it was, whether the judgment rendered against an agent or officer of the Government in a case like this would be a bar to an action by the Government to recover the same property from the party who had recovered it in the action against said agent or officer.   And since the Government can not be sued without its consent, but can maintain an action against any one else whether he consents or not, it would seem to result from the doctrine laid down in that case that a person who claims title to land in the possession of the United States can not have his title finally determined in any other way than by bringing an action of ejectment against the officer in possession of the demanded premises and recovering a judgment against him which would constitute no bar to an action by the Government to recover the same property back.

In a note to *Lee* v. *Kaufman*, 3 Hughes, 150, Hughes, J., in speaking of the opinion in *Carr* v. *The United States*, says:

"There is a *dictum* in the case that where it appears in the course of a suit for possession that the possession assailed is that of the Government, the suit ought to cease; but this is a *dictum,* and I am not at liberty to assume, that the Court would intend by a *dictum* to overrule its own judgments in the cases of *Meigs* v. *M'Clung, McConnell* v. *Wilcox, Grisar* v. *McDowell,* and *Cooley* v. *O'Connor.*" It does not seem to us that *Carr* v. *The United States* is an authority in point upon the question of the right of the plaintiff to maintain this action. And we think that the decision in *Polack* v. *Mansfield, supra,* is in harmony with the weight of authority upon that question.

But this is not the only ground upon which the appellant insists that the order denying his motion for a new trial should be reversed. He in fact says, that if it be conceded that the facts admitted by the plaintiff did not constitute a complete defense to the action, that those facts taken in connection with other facts proved at the trial did establish a complete defense.

The case, as now presented, is somewhat complicated by reason of there having been a former trial and judgment and an appeal to this Court from an order denying the plaintiff's motion for a new trial in this same action. His motion for a new trial was based upon insufficiency of the evidence to justify the decision of the Court, and this Court reversed the order upon that ground, in effect holding that upon the evidence before the Court on the first trial the plaintiff should have had judgment in his favor. (*King* v. *La Grange,* 50 Cal. 328.) Unless, therefore, the defendant on the last trial proved some material fact which he omitted to prove on the first trial, the decision of this Court on the former appeal became the law of the case. As stated in the brief of respondent: "The effort of the defendant at the first trial was to show that Perry, the executor of Ward, deceased, attempted and purported to convey the community interest of the deceased by his deed to Curtis, and further, that though he did not convey such interest, yet that Mrs. Ward afterwards *ratified* the supposed conveyance of her community interest to Curtis."

It was held on the former appeal that the evidence was

insufficient to support a finding that the deceased attempted to dispose of more than his own half of the community property, or that his widow knowingly performed any act indicating, or which could be construed to be a waiver of her rights under the will.

Upon the question of the intention of the testator to devise more than his own half of the community property, the evidence on the last trial was the same as upon the first, and this Court, on the former appeal, held that said evidence did not tend to prove any such intention. That, therefore, is no longer an open question in this case.

Upon the question whether Mrs. Ward ratified the sale of her interest in the community property, the defendant introduced a bill in chancery filed in the United States District Court for California on the eighteenth of March, 1854, by James D. and Maria N. Verner, Grace T. Starr, Trustee of Emily H. S. Ward, and Emily H. S. Ward against Joseph R. Curtis, and Philo H. Perry, executor, etc. This bill is signed by Magraw & Wills as solicitors for Mr. and Mrs. Verner, and by J. H. Clay Mudd as solicitor for Mrs. Starr and Mrs. Ward, and is verified by Henry Carrington, as attorney in fact of Mrs. Starr and Mrs. Ward. The relief prayed was that the sale by Perry, executor, to Curtis should be set aside, and that the surviving partners of Ward, deceased, should pay over to his executor one third of the money received and to be received from the United States under the contract of Curtis for the sale of said premises to the United States. In the opinion of the then Attorney-General of the United States: "The bill, from beginning to end, in its body and prayer for relief, affirms the sale to the United States, and seeks only an account and decree to complainants of their due proportion of the proceeds of the contract of sale to the United States."

Unless the filing of this bill operated as a waiver by Mrs. Ward of her rights under the will of her late husband, or as a ratification of the sale made by the executor, there is no evidence tending to prove that she ever waived any of her said rights, or ratified the sale of her share of the community property, by the executor of said will. For this Court held on the former appeal that, independently of the filing of said bill, there was no evidence which tended to prove such waiver or ratifi-

cation. The theory of the bill as stated, and we think correctly stated, by respondent's counsel is "that Curtis, Perry and Ward were tenants in common of the lot in question, on which was an assay office, and during the life of Ward were negotiating to sell the land, building and machinery to the United States Government for the purposes of a mint, that before the bargain was concluded Ward died, and the surviving partners manipulated the matter, so that Perry, as executor, sold to Curtis, the other surviving partner, all of Ward's interest in the land and assay office for the inventory price, and then Curtis sold out to the Government and the two divided the proceeds. The allegation is that Perry, as sole executor, conveyed testator's interest to Curtis. There is no allegation that Perry conveyed, or purported to convey, Mrs. Ward's interest as survivor of the community to Curtis, or even that the United States supposed they were getting her interest from Curtis, or that they paid anything to Curtis for her interest, or that any portion of the price received by Curtis was on account of her interest."

We are unable to see that there is anything in the bill which tends to prove a ratification of the conveyance of her interest in the community property, which it is claimed that the executor attempted to convey. There is no evidence that she knew that the deed to Curtis purported to convey her interest, and that, with knowledge of all the facts, and of her legal position and rights, she accepted the price of said interest. We do not doubt the correctness of the ruling of the Court upon the admissibility of the letter of Magraw & Wills in evidence. It was clearly *res inter alios acta.*

The objection that the Court had not the power upon the death of Swain to continue the action against La Grange as his successor in interest comes too late.

Order affirmed.

MORRISON, C. J., and ROSS, McKINSTRY, and McKEE, JJ., concurred.