CENTRAL TRUST CO. OF NEW YORK v. CALIFORNIA & N. R. CO. et al.
(SMITH et al., Interveners).

(Circuit Court, N. D. California. July 6, 1901.)

No. 12,231.

1. MORTGAGES—FORECLOSURE BY TRUSTEE—INTERVENTION.

Individual bondholders have a right, in a suit by the trustee to foreclose a mortgage securing bonds, to intervene for the purpose of contesting the validity of certain of the bonds.

2. SAME—BONDS SECURED.

Under a mortgage to secure first mortgage bonds, providing that they can be issued only for the purpose of constructing the railroad of the mortgagor, bonds issued on a contract for construction cannot participate in the proceeds of the foreclosure,—the work not having been performed under the contract, and some of them returned to the mortgagor having been voted by it to persons in payment of services as officers and attorneys,—except as they came into the hands of purchasers for value and without notice.

3. SAME—PRIOR LIENS.

A claim which a railroad company agrees to pay a person out of the proceeds of the sale of the first bonds sold by it does not take precedence as to the proceeds under foreclosure of the mortgage thereafter given to secure bonds issued for the construction of the road, but stands on the same basis as that of any general creditor.

4. SAME—PROOF OF OWNERSHIP OF BONDS.

A person having intervened in a suit to foreclose a mortgage securing bonds, and having alleged by his bill of intervention that he was the owner and holder of certain of the bonds, and his ownership having been put in issue, and a reference made as to the issue raised by the pleadings, and testimony introduced that he was not the legal owner, he must prove his ownership, and cannot rely on his mere possession of them to maintain his claim.

Platt & Bayne, for complainant.

John A. Wright, for defendant Mary E. Roberts.

Galpin & Bolton, for intervener C. H. Smith.

H. N. Clement and T. C. Judkins, for certain defendants in intervention.

Myrick & Deering, for intervener Watkinson.

MORROW, Circuit Judge. This action was brought on June 17, 1896, by the complainant, a corporation of the state of New York, to foreclose a mortgage executed by the defendant California & Nevada Railroad Company, a California corporation, on the 10th day of April, 1884, to secure to the complainant the payment of certain first mortgage bonds of the defendant company to the extent of $5,000,000, of which 545 bonds have been issued, of the value of $1,000 each. The defendant railroad company filed no answer. On December 26, 1896, Charles H. Smith filed a bill of intervention, alleging that he was the owner of 304 of the bonds issued, and that 200 of the remaining bonds issued were illegal, invalid, and not a legal obligation of the defendant company, and could not be enforced as against its property. Answers to this bill of intervention were filed by the various defendants other than the California & Nevada Railroad Company, and the matter was referred to the master in

chancery to take evidence therein and report to the court which of the bonds involved in said action are legal and valid obligations of the defendant railroad company, and which of said bonds, if any, were illegally issued; also to report on all matters at issue raised by the pleadings. The master finds with regard to the bonds in question (1) that 345 of those issued, including those claimed by the intervener Charles H. Smith, were legally issued, and are legal and valid obligations of the defendant railroad company; (2) that none of the remaining 200 of said bonds were legally issued, and they are therefore not legal or valid obligations of the defendant railroad company, except such of them as are held by bona fide purchasers. As to the claims of the various defendants in intervention the master finds as follows: That, of said 200 bonds illegally issued, those in the treasury of the defendant railroad company, or in the possession, custody, or control of the defendants in intervention, J. J. Scrivner, E. A. Phelps, J. S. Emery, Abner Doble, F. M. Smith, Alton H. Clough, Clement & Judkins, or of any other person or persons who at the time of acquiring the same had notice of the terms of said mortgage and of the illegal issuance of said bonds, are not valid obligations of the defendant railroad company, and each and every of such bonds should be surrendered and canceled; that the Oakland & San Francisco Terminal Company is not in the position of a holder for value without notice, and the bonds voted and delivered to it by the defendant railroad company were illegally issued, and not valid obligations of said company, except in the hands of a bona fide purchaser; that the intervener J. H. T. Watkinson is the owner and holder of 11 of the 200 bonds aforesaid, and such bonds and the accrued interest thereon are legal and valid obligations of the defendant railroad company. The master further finds that the rights claimed by the defendant Mary E. Roberts do not constitute such an equitable lien on the property of the defendant railroad company as to give her priority over the bondholders, and her prayer must therefore be denied. And with respect to the issues raised under the bill of intervention of Charles H. Smith the master finds that said intervener was not debarred from the right of intervention by reason of his citizenship, as in the courts of the United States a party may intervene to assert his rights without reference to the citizenship of the parties, but as no right for intervention other than that of ownership of the bonds was alleged or proven, and as that right was not established, mere possession not being sufficient to constitute him a bondholder, he is not entitled to intervene, and his amended bill of intervention should be dismissed. As to the unpaid interest coupons upon some of the bonds, the master does not report, as, following the practice stated in Railroad Co. v. Fosdick, 106 U. S. 47, 68, 71, 1 Sup. Ct. 10, 27 L. Ed. 47, the accounting to ascertain the amount due follows the decree, and, no decree having yet been entered in this case, such accounting could not be made by the master, even though a stipulation between certain counsel in the case was filed, setting forth the method in which the unpaid interest coupons due upon the bonds should be calculated and ascertained. Such stipulation would not be binding upon the bondhold-

ers' not before the court, and the master cannot regard it. Exceptions have been taken to this report by the various parties interested.

The objection that the intervener Charles H. Smith is not legally or equitably entitled to intervene in this action as against the other bondholders cannot be sustained. The principle that the trustee named in the mortgage given to secure the payment of bonds is the proper party to protect the interest of all the bondholders, and that individual bondholders will not be permitted to take part in the litigation, is not applicable to a controversy involving the validity of bonds for the satisfaction of which the foreclosure proceedings are being conducted. An intervention is permissible and proper in such a case, for the reason that the interests of the trustee and the intervening bondholder have ceased to be identical. Short, Ry. Bonds, 482. In Railroad Co. v. Cowdrey, 11 Wall. 459, 20 L. Ed. 199, the action was brought against the railroad company to foreclose first, second, and third mortgages to pay in due order the several outstanding bonds of the company. The trustees mentioned in the mortgages were dead, and the suit was brought by certain of the bondholders for themselves and for all other holders thereof who might come in and contribute to the costs and expenses of the suit. It was objected that the complainants had no right to sue for themselves and in behalf of the several classes of bondholders under the different mortgages. In answer to this objection the supreme court held that the antagonism of interests was not a sufficient objection, as the rights of all bondholders were protected by the opportunity given to all to intervene and contest the claim of any. The court said:

"If any class of bondholders wish to contest the proceedings of a prior mortgage, they have a perfect right to intervene in the suit and file a cross bill setting up the matter of objection. All bondholders, including the complainants themselves, have to establish their claims in the case before it is finally closed, and before a distribution of the assets can be made. And any bondholder proving his claim may contest the claim of any other bondholder."

The same principle would have been applicable to the proceedings had the action been commenced by the trustees of the mortgage.

In Williams v. Morgan, 111 U. S. 684, 4 Sup. Ct. 638, 28 L. Ed. 559, this right of contest by intervention was sanctioned by the supreme court in a case where the holder of railroad bonds secured by a mortgage under foreclosure was held to have an interest in the amount of the trustee's compensation which entitled him to intervene and contest it, and to appeal from an adverse decision. In Richardson v. Green, 133 U. S. 30, 10 Sup. Ct. 280, 33 L. Ed. 516, the controversy was concerning the validity and priority of certain claims. The action, as in the present case, was by a trustee against a railroad company, to foreclose a mortgage given to secure the payment of certain bonds. The company made no defense, but numerous parties holding bonds secured by the mortgage, and others with claims of various kinds against the company, with leave of court intervened in the case, and were allowed to prove their respective claims. The controversy resolved itself into a contest over

the validity of certain bonds, and for priority among the respective claimants in the distribution of the proceeds of the sale of the mortgaged property thereafter to be made. The matter was referred to a master to take testimony and report upon the validity and also the priority of the various claims filed. The master made his report, classifying the valid claims according to their priority, and rejecting the claim of at least one bondholder for certain bonds held by him. This report was confirmed by the decree of the court, and affirmed on appeal to the supreme court. The right of intervention appears to have been admitted without controversy, and the case was cited as authority by Judge Ross in the case of Farmers' Loan & Trust Co. v. San Diego Street-Car Co. (C. C.) 45 Fed. 518, 519, in support of the right of an intervener having an equitable lien upon the mortgaged property to contest the priority of other asserted liens. Assuming, then, that Charles H. Smith has an interest in the controversy, it is clear that the objection to his intervention is untenable and must be overruled.

The defendants in intervention except to that portion of the report which finds that the 200 bonds were illegally issued and are not valid obligations of the defendant railroad company, and to the special findings that those of the defendants in intervention holding certain of such bonds have not valid claims against the defendant railroad company. Their exceptions are based upon the ground that the evidence does not sustain the findings. The report of the master is most comprehensive upon this point, and contains a complete analysis of the facts upon which his findings are made. His conclusion is that the terms of the mortgage, specifying that first mortgage bonds could only be issued for the purposes of building, constructing, completing, and equipping said railroad, and the acquirement of terminal facilities therefor, did not comprehend the use of such bonds for the payment of general expenses incident to the management of the road, officers' salaries, or for services connected with the present litigation. The facts warranting this conclusion may be outlined as follows: The 200 bonds in question were issued by the defendant railroad company upon a contract for the construction and equipment of a certain number of miles of railroad, and were paid in advance of the work to be performed under said contract. The work was never completed, and the defendant railroad company offered to release the contracting company and cancel the contract, upon the return of the 200 bonds. It does not clearly appear that the bonds were actually returned. The contracting company had turned them over to several of the defendants in intervention in exchange for stock of the defendant company, and in some cases these persons had disposed of them to other parties. By the minutes of the company, however, it would appear that 183 of these bonds had been returned, and were voted to the various defendants in intervention now holding them, in payment of services as officers and for attorney's fees. There is clearly some irregularity in these proceedings. But as the purpose for which these bonds were issued has never been accomplished, and as their ultimate disposition is not shown to have been in accordance with the

purpose of issuance, they are undoubtedly not valid obligations of the defendant railroad company, and the finding of the master must be sustained.

Exception is also taken to the finding of the master that J. H. T. Watkinson is a bona fide purchaser of 11 of the 200 bonds declared to be illegally issued, and is entitled to be protected in such ownership. It appears from the evidence that these 11 bonds were a part of the number voted to J. J. Scrivner for services as an officer of the company, and were delivered by him to a real-estate agent for sale, and were by this agent sold to the defendant Watkinson; that he purchased them for a valuable consideration, and without notice of the illegality of their issuance. No bad faith is shown on the part of the defendant Watkinson, and his status as a bona fide purchaser is clearly established, as well as his right to protection as such purchaser, according to the rule obtaining in such cases. Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857; Cromwell v. County of Sac, 96 U. S. 51, 24 L. Ed. 681.

The defendant Mary E. Roberts excepts to the master's report for the reason that it does not contain a finding that the proceeds of the first mortgage bonds of the defendant railroad company are impressed with a trust in the nature of a lien, or a lien in the nature of a trust to the use of the said Mary E. Roberts, by which she should receive the first benefit of the proceeds. It appears that Mary E. Roberts loaned or advanced to the predecessor of the defendant railroad company the sum of $5,000, receiving therefor the following writing: "To C. F. Burrell, Treasurer of the California and Nevada Railroad Company: Pay to Jno. T. Davis or order five thousand dollars, payable out of the proceeds of the sale of the first bonds sold of this company. E. M. Walker, President. E. A. Phelps, Secretary." Upon its face it bears the following indorsement: "Accepted to be paid as herein specified. C. F. Burrell, Treasurer;" and upon the back of the instrument is indorsed: "Pay to the order of Mrs. Mary E. Roberts. Jno. T. Davis." Thereafter, and before any payment was made to said Mary E. Roberts, the defendant railroad company was formed, and the first corporation sold and transferred to the second company its entire road and properties; the second company agreeing to assume all the outstanding obligations of the first company. The second company thereafter executed the mortgage to the complainant herein, under which the bonds in question were issued. Nearly two years after the execution of this mortgage the said Mary E. Roberts commenced an action against the defendant company upon the written instrument above set out, to recover the amount of her loan, with interest. A writ of attachment was issued and levied upon the whole property of said defendant railroad company, and has not yet been discharged. It is contended in her behalf that her claim constitutes an equitable lien upon the property mortgaged, and takes priority in the marshaling of the assets over all of the bondholders. That such equitable right inheres in Mary E. Roberts against the defendant railroad company under the terms of the transfer to it by the first company is not denied by the master, but he maintains that the only question

to be considered in this proceeding in connection with her claim is her right to share in the proceeds of the foreclosure sale with the bondholders, or prior to any of them. Upon this point the master finds that, by the very terms of the written instrument upon which she bases her claim, no lien prior to that of the mortgage can be asserted. It states that her loan is to be paid "out of the proceeds of the sales of the first bonds sold" of the defendant railroad company. No bonds could be issued or sold until after the execution of a mortgage providing for their issuance, and the existence of a mortgage lien upon the property was therefore a condition precedent to the lien sought to be established by this writing. Her claim is therefore in the same category as that of any general creditor of the defendant railroad company, in this foreclosure proceeding. This view of the master is well sustained by the opinion of Mr. Justice Field in the case of Fogg v. Blair, 133 U. S. 534, 10 Sup. Ct. 338, 33 L. Ed. 768.

Exception is also taken to the finding of the master that the intervener Charles H. Smith has not established his right to certain of the bonds in controversy. His bill of intervention is under oath, and alleges that the intervener is the owner and holder of 304 of the 545 bonds issued under the mortgage, and described in the bill of complaint as due and unpaid. The reference to the master on the 1st day of February, 1897, was "for the purpose of taking the evidence therein and reporting to the court which of the bonds involved in the said action and sued upon by the said complainant are legal and valid obligations of the said California & Nevada Railroad Company, and which of said bonds, if any, were illegally issued." The pleadings having established the fact that the bonds issued under the mortgage were due and unpaid, it only remained for this court, as preliminary to a decree of foreclosure, to determine the issue, also raised by the pleadings, as to which of the bonds involved in the action were the legal and valid obligations of the mortgagor. The order of reference was, however, amended by an order of the court made and entered on the 5th day of March, 1900, enlarging the scope of the order of reference to "all matters and issues raised by the pleadings." It appears that the answer of the defendants in intervention to the bill of intervention denied that the intervener Charles H. Smith is the owner or that he is entitled to the possession of the 304 bonds claimed by him in his bill, or that he is the owner or entitled to the possession of any portion of them. Upon this issue, and under the terms of the amended order of March 5, 1900, the master took testimony, over the objection of the intervener, relating to his ownership of the bonds in question. The intervener claimed that his possession of the bonds was sufficient for the purposes of the intervention, and offered no evidence in support of his claim of ownership of the bonds. The master is of the opinion that the mere possession of the bonds by the intervener, without the showing of any legal right thereto, is not sufficient to maintain his claim. The ownership having been put in issue, and some testimony having been introduced tending to show that the intervener was not the legal owner of the bonds, it devolves

upon the intervener to prove his ownership thereof, and not rely upon the mere possession of the bonds to maintain his claim. The intervener has asked, however, that, if the finding of the master in this behalf should be sustained, he might be allowed to introduce testimony in support of his claim of ownership of the bonds. The court is of the opinion that an opportunity should be given the intervener to present further testimony. This need not, however, delay the entering of a decree of foreclosure. It is not necessary at this stage of the proceedings to determine as a finality the ownership of the bonds in question. It is only necessary that there shall appear that there has been a default in their payment, and the amount of that default. Guaranty Trust & Safe-Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 137, 150, 11 Sup. Ct. 512, 35 L. Ed. 116; Toler v. Railroad Co. (C. C.) 67 Fed. 168, 181. This showing having been made, a decree of foreclosure may be entered in accordance with the prayer of the bill of complaint. The report of the master will therefore be confirmed, as indicated in this opinion, and decree of foreclosure entered.