PENNSYLVANIA R. Co. *et al.* v. ALLEGHENY VAL. R. Co. *et al.*

(*Circuit Court, W. D. Pennsylvania.* April 28, 1890.)

1. CORPORATIONS—INSOLVENCY—RECEIVERS—INTERLOCUTORY ORDER OF SALE.
   In a proper case, a court of equity, having the possession by a receiver of the property of an insolvent railway company, may make an interlocutory order for the sale of the property before the rights of the parties under several mortgages have been fully ascertained and determined.

2. SAME—DISCHARGE OF MORTGAGE NOT YET DUE.
   But in this class of cases a court of equity will never make such interlocutory order for an immediate sale upon terms discharging the lien of a mortgage not yet due, unless it clearly appears, not only that in the end there must be a sale of the property, but a sale upon those terms.

**3. SAME.**

Income bondholders secured by a junior mortgage, the plaintiffs in a cross-bill, petitioned the court, *pendente lite,* for an interlocutory order for the immediate sale of the property of an insolvent railway company defendant in the hands of a receiver, upon terms discharging the lien of two senior mortgages securing a large issue of bonds having a long time yet to run. The litigation involved the validity of the lien of these two mortgages, and that question was undetermined, and the final issue of the litigation was otherwise uncertain. *Held,* that the petition for a sale upon the proposed terms should be denied.

In Equity. *Sur* petition for an interlocutory order of sale, and demurrer to same. Motion for an order of sale under said petition.

*John G. Johnson, George Shiras, Jr.,* and *D. T. Watson,* for petitioners. *Samuel Dickson,* for trustee.

ACHESON, J. This case is now before the court upon a motion for an interlocutory order of sale, before final hearing, of the lines of railroad, franchises, and corporate property generally of the Allegheny Valley Railroad Company, a defendant in the suit. For the proper understanding of the application, it will be necessary to state the issues here involved, and to recite briefly the proceedings in the cause thus far. The original bill set forth that the fixed charges of said company are—*First,* a mortgage on the company's main line, dated March 1, 1866, to secure $4,000,000 of interest-bearing bonds, due March 1, 1896; *second,* an issue of bonds amounting to $10,000,000, dated March 31, 1869, and due April 1, 1910, with coupons attached, for the payment semi-annually of interest at the rate of 7 per cent. per annum, secured by a first mortgage, of the same date as the bonds, on the company's line of railroad, from the mouth of the Mahoning to the mouth of Bennett's branch, and further secured by a mortgage dated September 4, 1874, on the company's main line; *third,* a mortgage dated April 1, 1869, to secure to the commonwealth of Pennsylvania $3,500,000 of bonds, which are further secured by a mortgage dated September 5, 1874, of which bonds about $2,600,000 remain unpaid; *fourth,* a mortgage dated October 1, 1874, to secure $10,000,000 of income bonds. These income bonds on their face are entitled to interest only out of the company's net income after payment of interest on bonds secured by the mortgages of prior date, and the mortgage to secure the income bonds is made expressly under and subject to the lien of the five mortgages above mentioned. By an indorsement on each bond of the issue of March 31, 1869, the Pennsylvania Railroad Company (plaintiff in this suit) binds itself to purchase the bond at maturity from the holder at par, and also the several coupons at par as they fall due, "and, when so purchased, each and all of said bonds and coupons are to be held by said company, with all the rights thereby given, and with all the benefit of every security therefor," and by an indorsement on each coupon the company binds itself so to purchase the same. The bill alleges that the Allegheny Valley Railroad Company is insolvent, and had defaulted in payment of the interest on the $10,000,000 of bonds of the issue of March 31, 1869; and that in consequence thereof, and by reason of its said indorsement, the Pennsylvania Railroad Company had been compelled to pay and purchase cou-

pons of that issue of bonds to the amount of over $4,000,000; and the bill prays for a sale of the corporate property, franchises, etc., of the Allegheny Valley Railroad Company, "under and subject to the lien" of the aforesaid five mortgages prior in date to the income bond mortgage, "as to the principal of the bonds thereby secured, and not theretofore matured, and the interest thereafter payable after the making of said sale." Under one of the prayers of the bill, receivers were appointed, the survivor of whom is in possession of all the corporate property of the Allegheny Valley Railroad Company, and operating its lines of railroad. The trustees under the mortgages of March 31, 1869, and September 4, 1874, were made defendants in the suit. and in their answer to the bill they submitted themselves to the court, but prayed "that, in the event of a sale being decreed as prayed for in the said bill, such decree may be formulated and enforced as will leave unaffected the lien of the several mortgages of which they are trustees, except so far as the interest thereon may be payable out of the proceeds of said sale." E. W. Ross, a holder of some of said income bonds, having been permitted to intervene in the suit, filed a cross-bill, the allegations of which are such that, if sustained by the proofs, the Pennsylvania Railroad Company would have no valid claim under the coupons of the bond issue of 1869 it had lifted and holds, but, on the contrary, would be bound to account for and pay to the Allegheny Valley Railroad Company large sums of money, and appropriate relief is prayed for as against the Pennsylvania Railroad Company. The cross-bill also avers that the line of railway described in the mortgage of March 31, 1869, was never constructed, but another line (the low-grade railroad) was built, and said mortgage was not given on the line actually constructed; that the mortgage of September 4, 1874, is fraudulent as against creditors, and void also for want of authority to execute it; and the cross-bill prays that it be decreed that the mortgage of March 31, 1869, is not a valid lien upon the "low-grade railroad" as constructed, and that the mortgage of September 4, 1874, is not a valid lien upon the premises therein described, and is void as against the income bondholders and other creditors of the company. There is no prayer in the cross-bill for any sale. Other income bondholders intervened in the suit, and have become co-plaintiffs with Ross in the cross-bill. The cause being at issue, an examiner was appointed, before whom a large amount of testimony has been taken, but the testimony is not closed.

In this state of the case, on February 1, 1890, the plaintiffs in the cross-bill presented a petition to the court, setting forth that, "so far as can be seen, many years must elapse before all questions in controversy can be settled;" that during each year of the receivership the earnings of the company have not been sufficient to meet the interest on the fixed charges, and that the arrears of indebtedness are thus increasing largely; that the railroad cannot be operated as advantageously by a receiver as in the hands of the owners; that in its equipments, etc., it is deteriorating in value; that the present is the most advantageous time to sell the property; and that an immediate sale is to the interest of all

the creditors; and that the longer the sale is delayed the more detrimental it will be to the petitioners and other holders of income bonds, "as well as to the complainants in the original bill." And the petition prays for an order for the immediate sale of the corporate property, franchises, etc., of the Allegheny Valley Railroad Company, discharged of all liens except the first mortgage, dated March 1, 1866, for $4,000,000. The petition also contains a prayer that, upon the confirmation of the sale, it be decreed that the principal of the $10,000,000 of bonds of the issue of March 31, 1869, shall become due and payable; but that prayer need not be here quoted at length or considered, as the present motion is simply for an order of sale of the property discharged of liens, as above stated. To this petition William J. Howard, the surviving trustee under the mortgages of March 31, 1869, and September 4, 1874, to secure the bond issue of the former date, has filed a demurrer, and resists the granting of the pending motion. All the other parties to the litigation have virtually submitted themselves to the decree of the court. The commonwealth of Pennsylvania, however, is not a party to the suit. Notice of the present application, indeed, was given to the treasurer and attorney general of the state, but there has been no appearance in behalf of the commonwealth.

Such being the matters in controversy, and this the state of the litigation, ought the present motion to be allowed? Undoubtedly, in a proper case, a court of equity, having the possession by a receiver of the property of an insolvent railway company, may make an interlocutory order for the sale of the property before the rights of the parties under several mortgages have been fully ascertained and determined; and we have an instance of the exercise of the power in the case of *Bank* v. *Shedd*, 121 U. S. 74, 7 Sup. Ct. Rep. 807. That decision the petitioners cite as a precedent to be followed here. In that case, however, not only was it certain that in the end the sale must take place in the manner ordered, but the property was depreciating in value by the accumulation of receiver's indebtedness, while the contested points were simply as to the extent of the priority of the lien of the first mortgage, and the amount due on that issue of bonds,—disputes which could be as easily settled after the sale as before, and which, in truth, involved mere questions of distribution. But very different is the present case. Here no receiver's indebtedness has been created. Indeed, the net income from the railroad has been sufficient, at least, to meet the interest on the first mortgage for $4,000,000, and hence it is not proposed to disturb that lien. But the court is asked, by income bondholders secured by a junior mortgage, to discharge, by an immediate sale, the lien of prior mortgages securing an issue of bonds amounting to $10,000,000, which have yet 20 years to run, while the question of the validity of the lien of those mortgages—a question raised by nobody but the petitioners— is still pending and undetermined. The discharge of the lien of said mortgages is of the essence of the present application, the petitioners not seeking a sale upon any other condition.

Now, I think it may be confidently affirmed that in this class of cases

a court of equity will never make an interlocutory order for an immediate sale upon terms discharging the lien of a mortgage not yet due, unless it clearly appears not only that in the end there must be a sale of the property, but a sale upon those terms; for otherwise irremediable injury might be done to the parties whose security was thus stricken down *pendente lite.* But here the original bill is framed with a view of preserving the lien of the mortgages of March 31, 1869, and September 4, 1874, as respects the principal of the bonds thereby secured, and the interest to accrue after the sale; and the prayer of the bill is that to that extent the property shall be sold under and subject to the lien of those mortgages. Whether, by virtue of its ownership of the matured coupons acquired under its contract of purchase, the Pennsylvania Railroad Company, as against the bondholders, could enforce a sale of the property discharged of the lien of the mortgages before the maturity of the bonds, is a question which need not now be discussed or considered. Such a sale is not within the scope of the original bill. Therefore, if at final hearing the cross-bill should be dismissed, assuredly a sale upon the terms of the proposed interlocutory order could not be decreed under the pleadings. On the other hand, should the plaintiffs in the cross-bill obtain the full measure of relief therein sought, it would seem that no ground would be left upon which to base a decree of sale; or if they should succeed in securing only the relief prayed for against the Pennsylvania Railroad Company, then, in the event of a sale, the supposed insuperable objection urged by the petitioners to a decree discharging the lien of the mortgages as to part of the indebtedness, but retaining it as to part, might cease to have any application to the case, the coupons lifted by that company being out of the way. Taking into consideration, then, the nature of the controversy, and the uncertainty as to the final issue of the litigation, it seems to me very clear that the court would not be justified, at this stage of the case, by an interlocutory order to impose upon the holders of the bonds of 1869 the proposed terms of sale; and, this view being decisive, it is not necessary to discuss or pass on the other objections urged by the trustee of the bondholders against the allowance of the motion. And now, April 28, 1890, the motion for an interlocutory order of sale, under the petition of February 1, 1890, is denied, and said petition is dismissed.