TOLER et al. v. EAST TENNESSEE, V. & G. RY. CO. et al.

(Circuit Court, E. D. Tennessee. November 26, 1894.)

1. RAILROAD MORTGAGE—FORECLOSURE — RIGHTS OF BONDHOLDERS TO BE ADMITTED AS DEFENDANTS—COLLUSION OF TRUSTEE.

Where, in a suit by minority railroad bondholders to foreclose the mortgage, the trustees of the bondholders file a cross bill for the same purpose, it is not such evidence of collusion by the trustee with the minority holders that the court will, on that ground, permit the majority of the bondholders, who oppose foreclosure, to be admitted as defendants.

2. SAME—CONTENTION AS TO POWER OF MAJORITY OF BONDHOLDERS.

It being contended, however, by the majority of the bondholders, that under a proper interpretation of the mortgage there can be no foreclosure without permission of a majority of the holders, they should be permitted to come in, as defendants, to maintain this contention.

3. SAME—PETITION TO BE ADMITTED TO ANSWER—USE AS ANSWER.

A petition to be admitted as defendants in a suit should be accompanied by the proposed answer, but, not being so accompanied, the petition may be allowed to stand as the answer, all impertinent matters being stricken therefrom.

4. SAME—DEFENSES TO FORECLOSURE SUIT.

In an action to foreclose a mortgage on the stock of a railroad, given to secure bonds, the allegations of the answer of a majority of the bondholders, who are opposed to foreclosure, that the value of the stock is abnormally depressed by the unusual financial condition; that there is good ground to anticipate substantial enhancement of the value; that complainants have tried to depress the price of the shares by false reports and harassing suits, and are bringing the suit in the interest of a rival railroad, that it may purchase the shares while the price is depressed,—present no defense.

5. SAME—CONSTRUCTION—RIGHT TO FORECLOSE.

Under the provisions of a mortgage that after default in interest for six months the trustee may, and, on demand of a majority of the bonds secured, shall, declare the principal of the bonds due and payable; that in either of such cases the trustee may, and on request of such majority shall, proceed to sell the mortgaged stock at public auction; pro-

vided, however, that at any time prior to the sale of said securities the holders of a majority of the bonds may notify the trustee that they desire to revoke the declaration that the principal is due, and he shall take no further steps to sell said securities unless and until another default, and that such provision shall relate to and govern any succeeding default,—it is only a summary sale by the trustee, under the power given by the mortgage, that can be prevented by a majority of the bondholders, and a suit to foreclose for default in interest may be maintained notwithstanding the opposition of such majority.

6. SAME—DUTY OF TRUSTEE.
Under the provision of a mortgage of railroad stock, for the equal pro rata benefit of all the holders of bonds secured thereby, that the voting power of the shares shall, after default in interest for three months, be exercised by the trustee, it being preserved to the mortgagors till that time, the trustee is not bound to vote according to the wishes of the majority of the bondholders, but he is to exercise his judgment and discretion for the interest of all the bondholders.

7. SAME—PLEADING—ALLEGATIONS OF OWNERSHIP.
In a suit to foreclose a mortgage, for default in payment of interest coupons on the bonds secured, the allegation that the coupons maturing at a certain time are "due and wholly unpaid, together with interest thereon, to your orator and other holders of said bonds," is a sufficient allegation of ownership.

8. SAME—DECREE NISI.
In a suit to foreclose for default in payment of interest coupons, it is not necessary, before a nisi foreclosure decree, that the bonds, with coupons, be produced, or that each claimant of a bond or of unpaid interest should identify himself as the owner of bonds or unpaid coupons, but it is only necessary that a default, and the amount thereof, appear.

Suit by Devereux Toler and others against the East Tennessee, Virginia & Georgia Railway Company and others, for foreclosure of a mortgage.

The complainant Toler is the holder of 5 bonds, of $1,000 each, issued by the East Tennessee, Virginia & Georgia Railway Company, the Richmond & Danville Railroad Company joining as co-obligor. These bonds are part of a series of 6,000, each for $1,000, and are known as the "East Tennessee, Virginia & Georgia Railway Company's Extension Five per Cent. Mortgage Bonds." They bear date as of February 1, 1890, and mature in 50 years, and bear interest at 5 per cent., payable semiannually, for which interest the usual coupons are attached. The bill alleges that the coupons maturing August 1, 1893, February 1, 1894, and August 1, 1894, have not been paid; that the total amount of interest in default is $450,000, which sum he alleges is due to the holders of said bonds. To secure these bonds the East Tennessee, Virginia & Georgia Railway Company and the Richmond & Danville Company executed an indenture conveying in trust to the Central Trust Company of New York 112,301 shares of the capital stock of the Alabama Great Southern Railway Company, Limited, and 5,001 shares of the Cincinnati, New Orleans & Texas Pacific Railway Company. Toler's bill was filed for a foreclosure of said mortgage, and is for the equal benefit of all holders of bonds, similarly situated, who may join in the bill as complainants. The defendants to this bill were the two obligated corporations and the Central Trust Company. He charges that both of the said railroad corporations are wholly and utterly insolvent, that neither is now operating any railroad nor engaged in any business, that the most of the property of each company has been sold by judicial foreclosure of mortgages upon their several lines of railroad, and that the remaining assets of the East Tennessee Company are in the hands of receivers of this court, awaiting final decree. He also alleges that the shares held by said trustee are wholly inadequate in value to pay off the said bonds, and that the income upon said shares is wholly insufficient to pay off the arrearages of interest, or provide for future installments. He charges that the Central Trust Company has

been requested to file a bill for the foreclosure of said trust, and has failed to bring such suit. The two railroad corporations made defendants filed separate answers, confessing the charges of the bill in all particulars. The trust company likewise answered, admitting the trust, the insolvency of the debtor companies, the default in interest, and the inadequacy of the trust to secure the bonds. Subsequently John Greenough, James Swan, and George Coppell and Frederick Taylor, claiming to own or represent more than 2,000 of said bonds, were permitted to join as complainants. After filing its answer the Central Trust Company, by leave of the court, filed a cross bill, making substantially the same allegations as to the trust, the default in interest, the insolvency of the obligors to the bonds, the inadequacy of the shares held by it to pay off and satisfy the principal of the bonds, and praying a foreclosure of the mortgage by sale of the shares assigned for the security of the bondholders. To this cross bill the complainant Toler and the two obligated railroad companies were made defendants. Answers were filed, and the case, as to the parties on the record, stood ready for a decree. At this stage of the cause, Henry A. Taylor, claiming to own and hold more than a majority of the bonds secured by said indenture, filed a petition in the pending case, setting out his interest under the mortgage, and praying to be admitted as a defendant to both the original and cross bill, with leave to answer and file a cross bill. Before this application had been disposed of the complainants and cross complainants each moved for a decree of foreclosure. The application of Taylor and others to be admitted as defendants, and the motion for a decree of foreclosure, came on and were heard together.

Henry Crawford and Humphrey & Davie, for complainants.

Butler, Stillman & Hubbard (A. H. Joline, of counsel), for the Central Trust Co.

Lawrence Maxwell, Mr. Kittridge, and J. M. Dickinson, for Taylor and others.

LURTON, Circuit Judge (after stating the facts as above). The primary question for decision arises upon the application of Henry A. Taylor, who claims to be the owner of a majority of the bonds secured by the mortgage sought to be foreclosed, to be made a defendant to both the original and cross bill. To this application the complainants object, and insist that he ought not to be allowed to intrude himself into the litigation, over their objection. If Taylor sought to become a party complainant for the purpose of aiding in the foreclosure, it would be difficult to see how he could be denied, inasmuch as the bill is filed for the benefit of all holders of bonds, "similarly situated, and who may choose to join herein, and take the benefit of this suit, and contribute to the expenses thereof." But this is not the purpose of petitioner. His object, as declared on the face of his petition, is to resist foreclosure, and to set up rights, as the holder of a majority in amount of said bonds, inconsistent with the relief which the complainants ask. If he is to become an actual party to the suit, it must be as a defendant. That a stranger to a suit will not be permitted, on his own application, and over the objection of the defendant, to become a defendant, is a well-established general rule, to which there are but few exceptions. Such a practice is unknown to courts of equity. Shields v. Barrow, 17 How. 145; Stretch v. Stretch, 2 Coop. Ch. 140; Anderson v. Railroad Co., 1 Fed. Cas. p. 842; Chester v. Association, 4 Fed. 489; Ex parte Printup, 87 Ala. 148,

6 South. 418; Fost. Fed. Prac. § 201. In the exceptional cases a defendant can only be added to those named as such in the bill by consent of the complainant, or upon order of the court requiring the bill to be so amended on penalty of dismissal for want of proper parties. Payne v. Parker, 1 Ch. App. 327. When the suit is conducted by some of a class for the benefit of all having identical interests, or by a trustee under a trust or mortgage for the equal security of a number of unnamed beneficiaries, all who have such common interests and rights are parties by representation; and as quasi parties are bound, in the absence of fraud, by the decree rendered in the cause. Where the trustee is vested with the legal title, and is given the usual powers incident to modern railway mortgages, those for whom he holds will be bound by what is done against him as well as by what is done by him. Where such a trustee is made a party to a foreclosure suit by bondholders suing in behalf of themselves and others similarly situated, the bondholders who do not join in the suit are not necessary parties. So, if such trustee files a foreclosure suit, whether it be by an original or a cross bill, it is not necessary that the beneficiaries should be made defendants. Indeed, such a practice would in most cases be absolutely impracticable, by reason of the impossibility of bringing all such holders of bonds before the court. In all such cases, whether the trustee be a complainant or a defendant, he stands for and represents all the beneficiaries who, though not actual parties, will be concluded by the decree, unless it is impeached for fraud or collusion between him and the adverse party. These principles are well settled. Kerrison v. Stewart, 93 U. S. 155; Shaw v. Railroad Co., 5 Gray, 171; Campbell v. Railroad Co., 1 Woods, 376, Fed. Cas. No. 2,366; Campbell v. Watson, 8 Ohio, 500; Shaw v. Railroad Co., 100 U. S. 605; Clyde v. Railroad Co., 55 Fed. 446; Forbes v. Railroad Co., 2 Woods, 334, Fed. Cas. No. 4,926.

But it must be obvious that one who is a party by representation, and therefore a quasi party, is not a stranger, in the sense of the rule I have stated. If he is to be bound and concluded by the decree, he is not a stranger to the proceedings. What, then, is the rule where one who is a quasi party asks to be made a defendant to a proceeding nominally conducted for his benefit, as one of the common beneficiaries? In Kerrison v. Stewart, cited above, Chief Justice Waite, after laying down the general rule that the trustee is in court for and on behalf of all the beneficiaries, and they, though not parties, are bound by the judgment, added:

"Undoubtedly cases may arise in which it would be proper to have before the court the beneficiaries themselves, or some one other than the trustees, to represent their interests. They then become proper parties, and may be brought in or not, as the court, in the exercise of its judicial discretion, may determine." 93 U. S. 160.

The problem to be solved, then, is to determine under what circumstances such a quasi party should be permitted to actively intervene. Where the purpose is to come in solely to participate in the benefits of the decree, there is little difficulty. Such inter-

veners are admitted, as a matter of course, in all cases where the court has jurisdiction of the res, or where a fund is to be distributed, or where the claims enforced must be proven, or where one beneficiary, to increase his own share, wishes to contest the claim of another upon the fund. Where the suit is by some of a class for the benefit of all similarly situated, and the common trustee is a defendant, or where the suit is by the common trustee, and relates to the mortgage or trust deed, the separate beneficiary or bondholder will not be suffered to intervene for the purpose of defending the common interests unless he alleges and shows that the trustee is incompetent, or for some cause cannot and is not faithfully representing the cestui que trust. The rule, as stated in Foster's Federal Practice, at section 201, is this:

"In suits brought by or against trustees, or otherwise affecting trust property, the beneficiaries of the trust, such as bondholders, will frequently be allowed to intervene for the purpose of protecting their interests; but ordinarily the right to intervene will be denied them, in the absence of fraud, neglect, inability, collusion, or bad faith by the trustee."

This rule is well supported by authority. Williams v. Morgan, 111 U. S. 698, 699, 4 Sup. Ct. 638; Richards v. Railroad Co., 1 Hughes, 28–36, Fed. Cas. No. 11,771; Anderson v. Railroad, Fed. Cas. No. 358; Clyde v. Railroad Co., 55 Fed. 446; Richter v. Jerome, 123 U. S. 233, 8 Sup. Ct. 106; Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., 53 Fed. 182; Skiddy v. Railroad Co., 3 Hughes, 320, Fed. Cas. No. 12,922; Jones, Corp. Bonds, § 398; Beech, Mod. Eq. Prac. § 574. Now, the petitioner here does not show any fraudulent, collusive, or wrongful conduct upon the part of the trustee. Upon the contrary, the conduct of the trustee, as exhibited on the pleadings and through the filed exhibits, indicates the most thorough impartiality between contending factions of bondholders. I cannot shut my eyes to the fact, which appears throughout these pleadings, that the nominal parties to this controversy are not the real parties in interest. Behind the complainants and the minority of bondholders, who desire a foreclosure of this mortgage, is a great and powerful railroad corporation, who, for a purpose of its own, may, and doubtless does, desire, through ownership of the mortgaged shares, to control the operation of the two lines of railway dominated by the shares held now by the trustee. Behind the petitioner, Taylor, is another powerful railway corporation, which, through the ownership of a bare majority of the bonds secured by this trust, seeks to dominate the same two lines of railway by means of the voting power vested in the trustee. The original bill of complaint was framed so as to apply for interlocutory relief to restrain, pending the litigation, any exercise of the voting power by the trustee which would operate to change the status or the management of the two dominated companies; it being alleged that the trustee had given its proxy, to vote the trust shares, to persons indicated by the holders of the majority in amount of the bonds. The bill contains many allegations affecting the title, purpose, conduct, and motives of the person or persons holding such majority, and the injurious character of the plans of

such holders upon the interest of the minority. Upon application for a temporary injunction, the holders of a majority of the bonds and the trustee appeared by counsel, and were fully heard in argument. I then declined to interfere with the discretion of the trustee as to how it should exercise the voting power, which all the beneficiaries had agreed should be lodged with it upon a default in payment of interest. I was not at all satisfied that a prima facie case was made which would justify me in substituting my judgment for the judgment of the trustee as to how that voting power should be exercised. That the trustee, on demand of a large minority of bondholders, should have filed a cross bill asking foreclosure, seems to me no evidence whatever of collusion, in the fraudulent sense of the term, with the minority holders. Whether it was entitled to foreclose or not, it should not have discharged its duty to the minority demanding foreclosure without submitting to a court of equity the question of foreclosure. For its own protection it could not have done less. It did not and does not seek to exclude Taylor, as a claimant of peculiar rights under the mortgage, from becoming a party. It perhaps could not have made him a party to its cross bill, because that would be to bring in a new party. Whether, under any circumstances, it is admissible to bring in a new party by cross bill, is possibly an unsettled question, though Mr. Justice Curtis, in Shields v. Barrow, 17 How. 145, expressed a very decided opinion that such practice was unknown and indefensible. Whether that point was authoritatively decided in that case is debatable, and there are reputable authorities which take a contrary view. Beech, Eq. Prac. § 436, and authorities cited. But, however that may be, the trustee, in its answer to the original bill, asked that Taylor and his associates might be made defendants, and it has filed its written consent that he shall now be added as a defendant. The conduct of the trustee, as shown by the record, utterly contradicts the bare intimation of collusion found in the petition of Taylor, unsupported by any statement of facts from which fraudulent collusion could be inferred. Neither fraud, collusion, neglect, nor bad faith being sufficiently charged on the part of the trustee, Taylor should not be permitted to become a defendant unless some further reason is shown. The strength of his application lies in the fact that he sets up rights under the mortgage, accruing to him as a holder of a majority in amount of these bonds, which are inconsistent with the right of foreclosure presented by bill and cross bill. His insistence, in substance, is that there can be no foreclosure until a majority of the beneficiaries demand it; that the indenture in question created a peculiar trust, under which peculiar rights and powers are vested in the holders of a majority of the bonds secured thereunder. He also insists that the trustee has no authority, without his consent, as the holder of a majority of the bonds, to foreclose under the powers contained in the mortgage, nor any duty, power, or right to apply to a court of equity for a foreclosure. I am, as will hereafter be more fully disclosed, utterly unable to attach any great weight to this interpretation of the mortgage. But the question is not

whether the mortgage will or will not bear the interpretation which the intervener wishes to support. If this position is right, then there ought not to be a foreclosure against his will, for that would operate to destroy a most valuable property right. This contention between the bondholders, as to their rights under the common trust, is one which the trustee cannot and ought not to undertake to represent. It is a contention inter se. The trustee cannot fairly represent both parties, and should not undertake to represent either. In such case it is proper that the cestuis que trustent, or a sufficient number of them, should be made parties. Payne v. Parker, 1 Ch. App. 327.

The majority assert an interpretation of this deed which, if sound, will prevent foreclosure under the present proceedings. Where there are differences between beneficiaries with respect to their rights, arising from different interpretations of the instrument under which all claim, the trustee should bring before the court representatives of each of the contending factions, that the views of each may be fairly presented and regularly adjudged. Neither will one set of the beneficiaries be permitted to maintain a bill for the interpretation of the trust without bringing before the court some of the class who assert rights inconsistent with the relief sought by the complainant. All have common interests under such a deed, but, if some of the cestuis que trustent claim rights inconsistent with the common interests of all, it would be grossly inequitable that they should be concluded by the decree, without opportunity to be heard. These principles are too obviously sound to need support of direct authority. With respect to this controversy the intervener is not, and cannot be, represented by the common trustee. He asked to be allowed to intervene that he may represent himself and his interests, as involved in the interpretation of this deed. I think that he should be made a defendant, under these circumstances, and that it would be flagrant injustice to exclude him, however lightly I might regard his contention. I may be wholly in error as to the proper interpretation of his rights. If so, he should be placed in a situation where my action can be reviewed by the court of appeals. To exclude him upon the ground that the deed will not bear the interpretation upon which he insists would leave him no right of review or appeal. It is true, he might present his question by an original bill, and thus obtain a standing. That would operate only to still longer delay the settlement of this question, and, unless he could obtain an injunction, might leave him nothing to litigate over after he had successfully asserted his view.

Another difficulty confronts me. It is this: Taylor has not accompanied his application with a copy of his proposed answer. He has had abundant time to do this, as his petition was filed more than a month before his application came on to be heard. An application to be allowed to answer and defend and to file a cross bill should be accompanied by the proposed pleading. The analogy between such an application and an application to file an amended or supplemented answer, or to set aside a pro confesso

and be allowed to answer, is most obvious. In either of the analogous cases the application should be by petition accompanied by a full copy of the proposed pleadings. 1 Daniell, Ch. Pl. (4th Am. Ed.) 781; Beech, Mod. Eq. Prac. § 394. The object in requiring an application of this nature to be accompanied by a full answer is—First, not to delay the complainant in his suit; and, second, that the court may see that a real defense is presented. The second purpose is probably obviated by the statements of the petition as to the proposed defense. The first objection can only be overlooked by permitting the petition to stand for an answer to both the original and cross bill. To permit the petitioner to be made a defendant is not a matter of strict right. It rests upon the judicial discretion of the court, and that discretion should only be exercised when thereby no substantial injury is done the complainant, and no unreasonable delay will result. The answer should not be one subject to exception for impertinence. Any issue tendered or irrelevant matter stated in a pleading, which is immaterial, is impertinent, and, as such, should be stricken out. Such an application should be accompanied by an answer showing circumstances which repel the notion of any attempt to evade the justice of the case, or to set up immaterial or ingeniously contrived defenses. "Nothing should be permitted to remain in an answer which is neither called for by the bill nor material to the defense." Beech, Eq. Prac. § 408; Stafford v. Brown, 4 Paige, 88. In the case last cited, Chancellor Walworth said "that when new matter not responsive to the bill was stated in the answer, if such matter was wholly irrelevant, and formed no sufficient ground of defense, the complainant might except to the answer, for impertinence, or might raise the question on the hearing." "Facts not material to the decision are impertinent, and, if reproachful, they are scandalous. The best rule to ascertain whether matter be impertinent," said Chancellor Kent, "is to see whether the subject of the allegation could be put in issue or be given in evidence between the parties." He adds: "The court will always feel disposed to give the answer a liberal consideration on this point of matter irrelevant, and to consider whether it can have any real or proper influence upon the suit, having regard to the nature of it, as made by the bill." Woods v. Morrell, 1 Johns. Ch. 105. The court may disregard on the hearing all impertinent matters presented in a pleading, and all the evidence relating to such immaterial matters, where it has not been excepted to and stricken out. Putnam v. Ritchie, 6 Paige, 397. It is obvious that, when an appeal is made to the judicial discretion of the court to be admitted as a defendant, the court may scan the pleading presented, and strike from it all impertinent and scandalous averments. Applying the test for impertinence stated by Chancellor Kent to the petition which is suffered to stand for an answer, it becomes most evident that much contained in it should be stricken out as furnishing no ground of defense, having regard to the nature of the case made by the bill. The averments contained in the original petition are legitimate considerations to be urged upon the court. They

present questions arising upon the face of the trust deed for interpretation.

The impertinent matter is found in an amended petition filed by Taylor on the hearing, and after complainants had, by leave of the court, stricken out of their bill many immaterial and irrelevant averments of fact touching the title, purposes, and motives of the holders of a majority in amount of said bonds. The abandoned parts of the original bill bore mainly upon an application for an interlocutory injunction; which has been refused. Taylor's original petition took issue upon the averments thus abandoned and stricken out. The effect of this action by the complainants was to leave their bill a simple bill for foreclosure by reason of defaulted interest. No issues of fact were left, upon which Taylor proposed to take issue. Under these circumstances he asked leave to file an amended petition, which, upon examination, presents numerous questions of fact, which, if material and relevant, will undoubtedly elicit a vast amount of evidence. But for the very high character of the counsel, and their very eminent abilities, one might suspect that time was of the essence of the application, and delay desired as a result of such amendments. This amended petition alleges, and offers to show: (1) That the trust estate has been abnormally depressed by the unusual financial depression which is alleged to exist, and by former mismanagement of the railroad properties it represents. (2) That there is good ground to anticipate that under proper management a substantial enhancement of the value of said trust shares will be the result. (3) Taylor alleges and proposes to show that complainants are not seeking a sale in good faith, or to realize on any investment, but that the suit is brought in the interest of the Southern Railway Company, alleged to be a rival line to the line composed of the two companies, whose management is controlled by the voting power of the trust shares; that the suit is controlled by said Southern Railway, and conducted by its counsel, and that its object is to bring the trust shares to a speedy sale in bulk, for cash, on a depressed market, that it may acquire the shares at a low price, and thereby dominate the said controlled lines. It charges that it (the Southern Railway Company) has endeavored to depress the price of said shares by spreading through the public press and otherwise the report that all questions in this case have been decided, and that a speedy sale of the trust estate would be had. (4) That complainants have caused certain alleged frivolous and harassing injunction suits to be filed for the purpose of interfering with the management of the Alabama Great Southern Railway Company, and had not, in said suits, properly and fully stated all the facts appertaining to the controversy, and had thereby secured injunctions restraining the railway company behind the intervener from securing possession of the management of said road. Now, it is manifest that, if the minority bondholders have a legal right to have a mortgage foreclosed, which is hopelessly in default, none of these matters offer a material defense. On petitioner's own showing, there is a struggle between those who hold a bare majority of these bonds

and those who hold somewhat less than a majority. The majority in the interest of one railroad company which wishes to control property represented by the trust shares seem to be satisfied with the status of the trust, inasmuch as the trustee has deemed it most prudent to allow the majority to exercise the voting power of the trust shares. The minority, receiving no interest and exercising no control, naturally seek relief through foreclosure. That they have found, or expect to find, a customer in another company, for the trust shares, is most likely. If their motive is to sell to such customer, it is, in a legal sense, unimportant. If they have sought to depress the market by the means described, their conduct is reprehensible; but I know of no authority for saying that thereby they have deprived themselves of their right of foreclosure, if any they have. Like defenses were interposed in Morris v. Tuthill, 72 N. Y. 575. The suit was one to foreclose a mortgage. The court held that:

"The facts that the assignor of a mortgage and his assignee acted in concert with the view, unnecessarily, to harass and oppress the mortgagor, and with intent to prevent payment, to the end that the equity of redemption might be foreclosed, and they become purchasers for less than the value, do not constitute a defense to an action to foreclose a mortgage. So, also, the facts that the assignee took title from motives of malice, and solely with the view to bring an action, and that the assignor assigned from a like motive, and without consideration, furnish no defense, and do not impeach plaintiff's title. It is sufficient to sustain the action, that the mortgage debt is due, has been transferred to, and is owned by, plaintiff; and the mortgagor can only arrest the action by paying or tendering the amount due."

See, also, Davis v. Flagg, 35 N. J. Eq. 493.

Whether complainants are conducting this suit from good or bad motives, for their own benefit or for the benefit of another, is immaterial. "It is no defense to a legal demand instituted in the mode and according to the practice of this court that the complainant is actuated by personal or improper motives." McMullen v. Ritchie, 64 Fed. 253; Forrest v. Railroad Co., 4 De Gex, F. & J. 131; Dering v. Earl of Winchelsea, 1 Cox, Ch. 319. The motive of a suitor cannot be inquired into. Ex parte Wilbran, 5 Madd. 2; Thornton v. Thornton, 63 N. C. 212. Were it otherwise, nearly every suit would degenerate into a wrangle over motives and feelings. Macey v. Childress, 2 Coop. Ch. 442. The general character of these averments seems to come within the ruling of Judge Hammond in Lafayette Co. v. Neely, 21 Fed. 744, where he decided that "epithetic" fraud is not sufficient to ground an action upon. Like defenses were set up in Farmers' Loan & Trust Co. v. Green Bay & M. R. Co., 6 Fed. 110, 111, and in County of Leavenworth v. Chicago, R. I. & P. R. Co., 25 Fed. 229. In the first case cited the court used the following language, which is applicable to much of the complaint made by Taylor:

"There are allegations to the effect that the object of Blair and Dodge and their associates was to obtain ultimate control of the mortgaged property, but the proceedings to foreclose the mortgage were necessarily public. The sale following the decree must likewise be public, and open to all bidders. Confirmation of the sale by the court must, of necessity, also be open

to the resistance of any party in interest, if the sale should not be fairly conducted, or if there should be such inadequacy of price as might involve a sacrifice of the property, or injury to the parties interested."

The conclusion on this aspect of the case is that all those parts of the amended petition indicated by the foregoing observations afford no defense to the bill of complainants, and none to the cross bill of the trustee. They will therefore be stricken out as impertinent. The petition will then be filed, and stand for an answer to both the original and cross bill. No ground has been stated for a cross bill, and application to file one is refused.

This brings me to the motion of the complainants and cross complainant for a decree of foreclosure nisi. It has been suggested by counsel for Taylor that the indenture in question constitutes a pledge, and is not technically a mortgage. The shares held by the trustee to secure these bonds are not held in pledge. To constitute a pledge, in the legal sense, the thing pledged must be delivered to the pledgee. Christian v. Railroad Co., 133 U. S. 241, 10 Sup. Ct. 260. Here the creditors are not in possession of the shares. They are held by a third person, who is vested with the legal title, and holds under an instrument executed solely as a security for the bonds, containing power of sale and the other incidents of a mortgage. The indenture is styled a mortgage, and the bonds are called "Gold Mortgage Bonds." Whether a deed of trust, or technically a mortgage, is immaterial. The rights and remedies of the bondholders secured thereby are substantially the same. The contention of Taylor is that the remedy of foreclosure vested in the trustee by the instrument is subject to the absolute control of the holders of a majority in amount of the bonds secured, and is exclusive of any remedy through a court of chancery. With all due respect to the learned counsel, I must say that this position is wholly untenable. By article second of the mortgage it is provided: (1) That, after a default in interest continued for more than six months, the trustee may, and, upon demand of not less than a majority in amount of said bonds, shall, declare the principal of said bonds due and payable. (2) That "in either of such cases" the trustee may, and, upon request of a majority in amount of said bonds, shall, proceed to sell the said stocks, or any part he may select, at public auction. (3) The deed then proceeded as follows:

"It is expressly provided, however, that at any time prior to the sale of said securities, as hereinbefore set forth, the holders of a majority in amount of all the bonds secured by this indenture, at the time outstanding, may notify the said trustee, in writing, that they desire to revoke the declaration that the principal of said bonds is due, and shall take no further steps to sell said securities unless and until another default by the said parties of the first part; and all the provisions of this article shall relate to and govern any succeeding default by said parties of the first part."

The instrument contains no other provisions concerning a sale by the trustee, or through a judicial proceeding. A majority in amount of said bonds did demand that the trustee should declare the principal of said bonds to be due and payable, a default in payment of interest having continued for more than six months,

and the same majority also demanded that the trustee should proceed to foreclose by a sale of the shares. To this demand the trustee yielded, and published a declaration of maturity, and advertised a sale. Subsequently, and before the sale had been made, the same majority, under the express power conferred in the mortgage, required the trustee to revoke the declaration of maturity, and to proceed no further with the sale. In compliance, the trustee revoked the declaration that the principal of said bonds was due and payable, and abandoned the foreclosure sale. Thereupon the minority, through complainants, demanded that the trustee should file a bill in equity for a foreclosure, on account of default in interest. The trustee not at once complying, complainants filed the present bill.

If there is any proposition well settled in the courts of the United States, it is that limitations contained in a mortgage, restricting the right of foreclosure, must be strictly construed. The provisions of the second article, which have been substantially recited, apply only to the exercise of the summary power of sale vested in the trustee, and do not purport to be exclusive of all other remedy. Guaranty Trust & Safe Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 137, 11 Sup. Ct. 512; Railroad Co. v. Fosdick, 106 U. S. 47, 1 Sup. Ct. 10; Morgan's L. & T. Railroad & Steamship Co. v. Texas Cent. Ry. Co., 137 U. S. 171, 11 Sup. Ct. 61; Alexander v. Central R. Co., 3 Dill. 487, Fed. Cas. No. 166; Credit Co. v. Arkansas Cent. R. Co., 15 Fed. 46; Farmers' Loan & Trust Co. v. Winona & S. W. R. Co., 59 Fed. 957; Mercantile Trust Co. v. Missouri, K. & T. Ry. Co., 36 Fed. 221. If the provisions of the mortgage concerning foreclosure were subject to the construction that they are exclusive of all right to resort to a court of equity, then they would be invalid, as intended to oust the jurisdiction of the courts, which, by the uniform current of authority, cannot be done. Guaranty Trust & Safe Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 143, 11 Sup. Ct. 512. Under the rule of strict construction, the provision requiring the trustee to "take no further steps to sell said securities" applies only to a summary sale under the power vested in it by the mortgage. It has no application to a proceeding begun by it in a court of equity to secure a judicial foreclosure. Gurnee v. Patrick Co., 137 U. S. 141, 11 Sup. Ct. 34; Guaranty Trust & Safe Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 142, 11 Sup. Ct. 512. This mortgage was made to secure principal and interest, equally. It recites as its purpose that it is "for the equal, pro rata benefit of all the holders of the bonds secured thereby, without any preference or priority of one bond over another by reason of priority in time of issue or negotiation thereof, or for other cause, or of principal over interest, or of interest over principal." A default in the payment of interest is a breach of the obligation. The trustee and the complainants join in the averment that the coupons falling due August 1, 1893, February 1, 1894, and August 1, 1894, are due and unpaid. This default the two obligated railroad companies confess. Taylor does not deny the default, nor the insolvency of the mortgagor, nor the

inadequacy of the trust estate to fully secure the bondholders. He denies no single fact material to relief under the original or cross bill. His defense that no right of sale exists in favor of the defaulted interest, unless he shall consent, is without merit. The provisions which enable him to prevent a declaration of maturity as to the principal of the bonds is valid and clearly expressed, and he is entitled to its full benefit. His right to prevent a sale by the trustee to make good interest in default is valid, and his right is indisputable. Thus he can and has prevented any summary sale because of defaulted interest. More than that; if the mortgagors shall pay off and discharge the interest in default, there can be no foreclosure until further default. The full effect will thus be given to the provisions which are favorable to the holders of a majority of said bonds. The voting power of the trust shares was preserved to the mortgagors until there should be a default in interest, continuing for three months. After such default the mortgage provides that the "voting power shall be exercised by said trustee." That this voting power shall be exercised at the dictation of the holder or holders of a majority of said bonds has no foundation. The trustee must exercise judgment and discretion, having regard to the general interests of the trust. Where there are differences of opinion among the bondholders as to what their interests require, the trustee must judge between them. In such case "it is not improper that he should be governed by the voice of the majority, acting in good faith and without collusion, if what they ask is not inconsistent with the provisions of the trust." Shaw v. Railroad Co., 100 U. S. 612; Bank v. Shedd, 121 U. S. 86, 7 Sup. Ct. 807. But the trustee cannot blindly submit to the domination of the majority. He should be reasonably satisfied that the general interests of the trust will be best subserved by acting with the majority of the beneficiaries. In my opinion, this voting power is an element of value attached to the trust estate. It is not the peculiar property of any bondholder, or set of bondholders. Whatever value it has is for the equal benefit of all the beneficiaries, and any claim that it is exclusively for the benefit of the holders of a majority of the bonds has no foundation whatever. Its exercise was intrusted to the judgment and discretion of the trustee, and not to the will of one or many who may happen to own a majority of the bonds. The majority have no right to appropriate that power exclusively to themselves, or to require the trustee to exercise the power without regard to the interests of the minority. The majority have no right to employ the voting power as an instrument by which the rights of the minority shall be injuriously affected. "Where two or more persons have a common interest in a security, equity will not allow one or more to appropriate it exclusively to himself, or to impair its worth to others. Community of interest involves mutual obligation." Jackson v. Ludeling, 21 Wall. 622.

The point has been made that it has not been alleged or shown that complainants own any of the defaulted coupons. Complainants claim to own or represent more than $2,000,000, par value, of

bonds. They allege that the coupons maturing August 1, 1893, February 1, 1894, and August 1, 1894, aggregating $450,000, "are due and wholly unpaid, together with interest thereon, to your orator and other holders of said bonds." This is a sufficient allegation of ownership. The cross bill of the trustee seeks the same relief in behalf of all unpaid interest. A decree finding unpaid interest is justified by the allegations of either bill. It is not necessary that each claimant of a bond or of unpaid interest should, at this stage of a foreclosure case, identify himself as the owner of bonds or unpaid coupons. It is not necessary that the bonds with coupons should be produced before a nisi foreclosure decree. It is only necessary that it shall, at this stage of the cause, appear that there has been a default, and the amount of that default. This showing has been made. Should a decree of sale be made absolute, the holders of bonds can then be required to produce their bonds and coupons before a master, and all questions connected with the amount due each, and of ownership, can then be determined. Guaranty Trust & Safe Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 150, 151, 11 Sup. Ct. 512. Such a decree is not to be regarded as final as to the debts entitled to share in the distribution, for any other creditor may challenge the debt when the claims are produced in the master's office for ascertainment and classification. The decree for a foreclosure only establishes that there has been a default in the payment of the three last installments of interest. It does not establish that that interest is due to any particular person. The debtor can prevent a sale by paying into the master's office the amount necessary to pay the interest in default. All proceedings will then be stayed until another default. Railroad Co. v. Cowdrey, 11 Wall. 479; Whitaker v. Wright, 2 Hare, 310; Guaranty Trust & Safe Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 150, 151, 11 Sup. Ct. 512. The right to a decree for unpaid interest is clear. The question has been fully discussed, and is emphatically decided in Railroad Co. v. Fosdick, 106 U. S. 47, 1 Sup. Ct. 10.

A decree nisi will be drawn as here indicated, requiring the mortgagors to pay into the registry of the court the amount of the defaulted interest, with interest from maturity of each installment. Such payment will be made on or before the expiration of 90 days from date of decree. In default of such payment, the shares held in trust will be sold for the foreclosure of the mortgage, principal and interest. I have no doubt but that the trust share should be held together, and sold as a block. The power of the shares, as a controlling majority, is clearly an element of great value. This, however, can be determined by offering the shares in small blocks, and then as a whole, and taking the bid which aggregates the larger sum. In case a sale is made, it must be a final foreclosure of the whole property, the purchase money taking the place of the trust shares. The distribution will be in satisfaction, pro rata, of all the bonds, principal and interest. This seems to be the practice, as settled in Howell v. Railroad Co., 94 U. S. 466, and Railroad Co. v. Fosdick, 106 U. S. 68, 69, 1 Sup. Ct. 10. If the interest in

default is not paid by the day named, then each beneficiary will be entitled to a ratable proportion of the value of the whole trust estate,—that value to be ascertained by a public sale. No beneficiary can be required to submit to a partition. The general principles governing are fully elaborated in Mason v. Mining Co., 25 Fed. 882. The case of Swasey v. Railroad Co., 1 Hughes, 17, Fed. Cas. No. 13,679, was quite exceptional in its facts, and the partition there ordered was doubtless due to the necessities of the situation, owing to the fact that the state of North Carolina was not, and could not be, made a party defendant. This defect of jurisdiction, in an identical case, proved fatal to the case of the creditors in Christian v. Railroad Co., 133 U. S. 241, 10 Sup. Ct. 260.