CENTRAL TRUST CO. OF NEW YORK v. CINCINNATI, H. & D. RY. CO.

(Circuit Court, S. D. Ohio, W. D.   March 23, 1908.)

No 6,133.

1. RAILROADS (§ 186*)—SUIT TO FORECLOSE MORTGAGES—INTERVENTION—CONTROVERSIES BETWEEN BONDHOLDERS.

In a suit by the trustee in a railroad mortgage securing bonds to foreclose the same, where a decree pro confesso had been entered and a reference made to a master to ascertain the property covered, and the amount of the bonds outstanding and the interest due thereon are mere matters of computation, leave will not be granted to certain bondholders to intervene for the purpose of litigating the validity of notes to which others of the bonds are held as collateral in advance of the entry of a decree of sale, and especially where the insolvency of the mortgagor is conceded, the property is being operated by receivers at a loss, and the notes attacked are negotiable and in the hands of unknown holders who are not parties.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 616;  Dec. Dig. § 186.*]

2. RAILROADS (§ 190*)—SUIT TO FORECLOSE MORTGAGES—PROCEDURE—CONTROVERSIES BETWEEN BONDHOLDERS.

In a suit to foreclose a railroad mortgage securing bonds, the court has power to order a sale before the final determination of the validity and amount of bonds held by each holder, and it is a recognized practice in such cases to postpone the final determination of all such questions until after the sale.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 623;  Dec. Dig. § 190.*]

3. RAILROADS (§ 186*)—PLEDGE OF BONDS IN TRUST—REPRESENTATION OF CREDITORS BY TRUSTEE.

A trustee appointed by a railroad company to hold mortgage bonds pledged as security for negotiable notes issued by the company is the agent of the company only, and not of the holders of the notes, and notice to the trustee of defenses against the notes is not notice to bona fide holders or purchasers;  nor does the fact that the trustee is a party to a suit to foreclose the mortgage in a different capacity make the note holders parties by representation, and no action can be taken in such suit respecting the validity of the notes unless such holders are brought in as parties.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 615;  Dec. Dig. § 186.*]

4. EQUITY (§ 115*)—PARTIES—BRINGING IN PARTIES BY CROSS-BILL.

It is not proper practice to permit one who is not a party to the original suit to be brought in by a cross-bill.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 280;  Dec. Dig. § 115.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. RAILROADS (§ 180*)—MORTGAGES—DUTY OF TRUSTEE.

A trustee under a railroad mortgage is bound to recognize the rights of the holders of all bonds which are prima facie valid, and to act on their request to foreclose when made by the requisite number.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 609; Dec. Dig. § 180.*]

6. RAILROADS (§ 186*)—SUIT TO FORECLOSE MORTGAGE—REPRESENTATION OF BONDHOLDERS BY TRUSTEE.

A trustee in a railroad mortgage in bringing a suit to foreclose acts for the benefit of every bondholder who may show his right to share in the proceeds of sale, and the fact that it may in a different capacity represent certain of the bondholders does not incapacitate it from acting for the others in bringing and maintaining the suit, although there may be controversy between them as to distribution of the proceeds.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 615; Dec. Dig. § 186.*]

In Equity. On application for leave to intervene.

White & Chase and Edward P. Moulinier, for Brooklyn Trust Co. and others.

Arthur H. Van Brunt, J. W. Warrington, and T. B. Paxton, Jr., for Central Trust Co.

LURTON, Circuit Judge. This cause is now heard upon an application of the Brooklyn Trust Company and other corporations for leave to intervene and become defendants herein and to file an answer and cross-bill. For the purpose of obtaining admission as defendants, the proposed answer and cross-bill is presented, and leave to file same is sought. The Central Trust Company has objected, and counsel for the proposed interveners and that company have been heard orally and by brief.

The proceeding in which the interveners want to intervene is a simple mortgage foreclosure suit in which the Central Trust Company, as trustee, seeks to foreclose a certain mortgage executed January 27, 1905, by the railway company, which is the sole defendant. The mortgage is known as the "consolidated mortgage," and provides for the security of bonds to be issued not to exceed $50,000,000, par value. In default of an answer this bill was taken for confessed, July 15, 1908. Subsequently a special master was directed to take proof and report the property covered by the mortgage, and the cause stood in this situation, awaiting this report, when this application was made for leave to intervene.

This petition shows that the petitioners hold of the outstanding issue of the consolidated mortgage bonds an amount aggregating in par value $2,000,000, as collateral security for certain promissory notes of the railway company, dated in September and October, 1905. It is then averred that of the outstanding issue of $17,500,000 under said mortgage $15,000,000 are held by the Central Trust Company under a trust created by the railway company March 1, 1905, to secure promissory notes made and sold by the railway company aggregating $15,000,000, said series of notes being known as "collateral trust notes." The present owners and holders of said "collateral trust

notes" are not parties to the pending suit, nor is it made to appear who are now such owners or holders. The object of this intervention is to prevent the participation of the bonds so held by the Central Trust Company in the benefits of the mortgage of January 27, 1905. The grounds upon which this relief is sought is not that the mortgage has not been duly executed, nor that its execution is ultra vires or fraudulent, for the petitioners are themselves holders of bonds issued under the same mortgage which, they say, are valid obligations, but because, as they aver, the "collateral trust notes" which are secured by the bonds so held by the Central Trust Company in its character as trustee under the trust created March 1, 1905, were issued for certain alleged illegal purposes and used for objects beyond the powers of the railway company, and that the bonds so held should not, therefore, be recognized as valid securities under the mortgage being foreclosed.

I shall not go into the sufficiency of the averments challenging the validity of the debts for which such outstanding bonds are collateral, but confine myself to the single question as to whether petitioners should be allowed at this stage of the proceeding to intervene for the purpose of having this question determined before a decree for sale under the pending bill. If I assume that a prima facie case is made against the bonds pledged to secure the "collateral trust notes," is it essential that the whole foreclosure proceeding shall stop until every holder of a bond issued under the "consolidated mortgage" shall have established his right to share in the proceeds of the mortgage sale? It is not necessary before a decree for sale under such a railway mortgage that the validity or ownership of every bond secured by it shall be first determined. The bill avers that bonds aggregating $17,500,000 were issued and are outstanding, and that there has been default in interest maturing on and after July 1, 1905. The mortgagor company makes no defense, and a decree pro confesso has been taken long since. The amount due is therefore a simple matter of calculation, which does not necessitate a reference. There is no intimation that the railway company has suffered a collusive default. There exists, then, all that is necessary for a decree nisi. It is undoubtedly proper practice, if not always essential, that such a decree nisi shall definitely disclose the nature of the default and the amount of principal and interest due as a consequence. This is to fix the amount which the mortgagor must pay in to prevent a sale, for it is necessary that a reasonable time be allowed for such redemption, for otherwise a valuable right of the mortgagor may be destroyed. But in order to declare and determine the amount of bonds due and outstanding and the amount of interest due and unpaid, it is not essential that the bonds and coupons shall be produced and proved. The necessary declaration of the amount to be paid in order that the mortgagor may redeem is not regarded as final or conclusive upon the point of the amount of the debt, for it is well settled that any holder of such bonds who presents them for a dividend out of the proceeds of sale may challenge the claim of any other when the allowance will diminish his own share in the fund. Galveston Railroad Co. v. Cowdrey, 11 Wall. 459, 479, 20 L. Ed. 199; Story's Eq. Juris.

§§ 548, 549; Whitaker v. Wright, 2 Hare, R. 310; Owens v. Dickinson, 1 Craig & Phill. 48, 56. Indeed, it is proper in any such decree to require that all holders of bonds shall present them to a special master, and that all persons claiming a right to share in the proceeds of sale shall have the right to challenge the right of any one presenting a bond to the special master for such purpose.

A court has the power to order a sale before the final determination of the validity and amount of bonds held by each holder, and the practice in railroad mortgage bond cases is to postpone the final determination of all such questions. First National Bank v. Shedd, 121 U. S. 85, 87, 7 Sup. Ct. 807, 30 L. Ed. 877; Guaranty Company v. Railroad Co., 139 U. S. 150, 11 Sup. Ct. 512, 35 L. Ed. 116; Dickerman v. Northern Trust Co., 176 U. S. 181, 194, 20 Sup. Ct. 311, 44 L. Ed. 423; Penn. R. Co. v. Allegheny Valley R. Co. (C. C.) 42 Fed. 82, 85; Northern Trust Co. v. Columbia Straw Paper Co. (C. C.) 75 Fed. 936; Toler v. East Tenn. & Virginia R. Co. (C. C.) 67 Fed. 168; Short on Railroad Bonds, § 755.

In Toler v. East Tenn. & Virginia R. Co., cited above, a case which on this point was favorably cited in Dickerman v. Northern Trust Co., 176 U. S. 181, 184, 20 Sup. Ct. 311, 44 L. Ed. 423, I adopted this course, and said:

"It is not necessary that each claimant of a bond or of unpaid interest should, at this stage of a foreclosure case, identify himself as the owner of bonds or unpaid coupons. It is not necessary that the bonds with coupons should be produced before a nisi foreclosure decree. It is only necessary that it shall, at this stage of the cause, appear that there has been a default, and the amount of that default. This showing has been made. Should a decree of sale be made absolute, the holders of bonds can then be required to produce their bonds and coupons before a master, and all questions connected with the amount due each, and of ownership, can then be determined. Guaranty Trust & Safe Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 150, 151, 11 Sup. Ct. 512, 35 L. Ed. 116. Such a decree is not to be regarded as final as to the debts entitled to share in the distribution, for any other creditor may challenge the debt when the claims are produced in the master's office for ascertainment and classification. The decree for a foreclosure only establishes that there has been a default in the payment of the three last installments of interest. It does not establish that that interest is due to any particular person."

These "collateral trust notes" themselves are commercial negotiable obligations, and their present holders would be necessary parties to any proceeding which seeks to defeat their right to share in the proceeds of the mortgage under which the bonds pledged for their benefit were issued. Neither would notice to the Central Trust Company of equities be notice to bona fide holders of such "collateral trust notes." The Central Trust Company is not charged to have been the agent of such holders, and it is plain that a trustee appointed by the pledgor or creator of a trust is only the agent of the principal creating the trust. To hold that notice to a trustee in a railroad mortgage to secure negotiable bonds is notice to every purchaser of such bonds of defenses against them would be to cast a cloud upon the millions of such securities outstanding. Curtis v. Leavitt, 15 N. Y. 9; Commissioners of Johnson County v. Thayer, 94 U. S. 631, 24 L. Ed. 133; National Waterworks Co. v. Kansas City (C. C.) 78 Fed. 428. Nor does the

fact that the Central Trust Company is the trustee under both trusts, that of January 27, 1905, and that of March 1, 1905, make the beneficiaries in the latter parties by representation here, nor is notice to it in one character notice to the beneficiaries under another and distinct trust. Compton v. Jesup et al., 68 Fed. 265, 15 C. C. A. 397. It is plain, therefore, that there could be no effective decree affecting the rights of such collateral trust note holders without bringing them before the court. The defenses which the petitioners wish to present involve the validity of certain obligations issued under a prior mortgage known as the "refunding mortgage." It is averred that $8,250,-000 of bonds issued under that mortgage were issued to acquire shares of stock in the Pere Marquette Railroad Company, and that such use was in excess of the powers of the railway company. This question would necessitate the bringing in of the trustee in the "refunding mortgage," as well as the holders of the bonds which it is said were used for an illegal purpose. One of the purposes of this intervention is to have that "refunding mortgage" scrutinized and the amount of valid outstanding bonds determined before any decree of sale under the later consolidated mortgage, and for this purpose the proposed cross-bill seeks to bring in the "refunding mortgage" in case the court does not compel the Central Trust Company to dismiss the present bill.

That a junior mortgagee may sell for the satisfaction of the mortgage subject to a prior mortgage is plain. It is, therefore, unnecessary to make senior mortgagees parties to such a bill. Nor is it proper practice to permit one who is not a party to the original suit to be brought in by a cross-bill. Shields v. Barrow, 17 How. 130, 144, 15 L. Ed. 158; Wright v. Frank, 61 Miss. 32; Toler v. East Tenn. & Virginia Ry. Co. (C. C.) 67 Fed. 173. Aside from the difficulties in respect of new parties, great delay and inconvenience must result if the petitioners are allowed to now come and litigate the questions they desire. The property of the railway company has now been in the hands of a receiver appointed by this court under the Horn bill, and later under that bill and the bill of the Central Trust Company, for more than two years. The bonded debt has been constantly accumulating. The receiver's debt has been increasing. There is, besides, a large debt due to persons claiming preferences over all mortgages as operating expense claims, as well as a large unsecured class of creditors. The plain legal right of the trustees under the "consolidated mortgage" is to sell subject to all prior liens or mortgages. The purchaser at such sale may, if he will, contest all such unforeclosed liens or mortgages. These considerations apply more directly to the proposal to bring in one of the mortgages senior to that under foreclosure. If the junior mortgagee does not want to have the amount due upon senior mortgages settled, he need not. They also apply to the effort to have determined the equities which the petitioners may have if the property does not bring enough to pay all the outstanding issue of bonds against the rights of some of the bondholders to share in the insufficient proceeds.

That a court may in its discretion decline to allow an unnecessary party to come in and be made a defendant is elementary. That the

court has the power in its discretion to postpone until after a sale all questions as between creditors over the distribution of the proceeds of sale cannot be seriously questioned. But it is said that the petitioners should be admitted as defendants and allowed to file the proposed cross-bill for the determination of the questions affecting the right of the outstanding $15,000,000 of bonds assailed, because the Central Trust Company should not be allowed to conduct this suit as such trustee: First, because the declaration of maturity was made by it without authority; second, because the suit has been filed without authority; and, third, because the trustee occupies antagonistic fiduciary capacities which conflict with its fitness to stand as a representation of petitioners as holders of "consolidated bonds." The first two objections rest upon the claim that the only outstanding bonds which are entitled to the benefits of the mortgage are the $2,000,000 which the petitioners hold as collateral to the promissory notes of the railway company, and $5,000,000 which the Central Trust Company holds as collateral for a $3,000,000 promissory note made by the railway company. Obviously the Central Trust Company in its character as trustee under this mortgage was compelled to respect the prima facie rights of the remaining $15,000,000 of bonds, and at their request declare maturity for default in interest and file this bill for foreclosure. That course was its legal duty, whether the demand was made upon it by itself in its character as trustee under the subsequent trust of March 1, 1905, or by the unknown beneficiaries of the later trust.

The assumption that interveners, as holders of 80 per cent. of the bonds which they assert are the only valid bonds, and that their views should have controlled the trustee against the other $15,000,000, is too tenuous for serious consideration. The action of the trustee in declaring a maturity and in later filing this bill is no way so antagonistic to any substantial legal or equitable right of petitioners as to justify the claim that it thereby antagonizes their interests in such way as to make proper their admission as parties.

The third objection, that the Central Trust Company occupies opposing fiduciary relations, and should not, therefore, be allowed to stand for and represent petitioners, is equally unfounded. In bringing to a sale the mortgaged property it acts for the benefit of every bondholder who may show his right to share in the proceeds of sale. The question of where the proceeds of the sale shall go is not a question which concerns the Central Trust Company, as complainant in this cause, or as trustee under the mortgage under foreclosure. In the settlement of that question every one presenting bonds for allowance stands for himself, and may, if he chooses, stand against every other creditor if the fund be insufficient. In that proceeding before the master the Central Trust Company may, if it will, file for allowance bonds which it holds as owner or as trustee under another trust, without placing itself in any position antagonistic to its duty as trustee under the foreclosed mortgage.

Finally, it is said that, if all questions as to validity and amount of obligations provable against the fund to arise from a sale is settled be-

fore the sale, petitioners will be in a better situation to protect themselves at the bidding. The same reason would apply in determining absolutely all prior liens against the mortgaged property before sale. Such a course will involve a frightful delay. Already this foreclosure has been pending for more than two years, and the property has been in the hands of a receiver for more than three years. About the utter insolvency of the railway company there can be no serious doubt. I have already stated that the receiver's debt is growing, and interest charges steadily accumulating. After delay of nearly two years in making this application—for the facts were accessable at any time after the appointment of the receiver—I am not disposed to assent to any such delay as must ensue before a sale if the questions mooted are to be settled before one can be made.

The conclusion I reach is that the petitioners must be denied the right to intervene at this stage, though they may do so before the master at the proper time.